Case Nos. 26-2190 & 26-2191

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

WEST MONROE PARTNERS, INC., *et al.*,

> *Appellants-Defendants, Cross-Appellees,*

*v.*

MATTHEW DALY, *on behalf of himself and all other similarly situated*,

> *Appellee-Plaintiff, Cross-Appellant.*

On Appeal from an Order of the United States
District Court for the Northern District of Illinois,
Case No. 1:22-cv-06805-JRB (Hon. John R. Blakey)

## APPELLANTS' OPENING BRIEF

Jeffrey Russell
Jacob Simon
Katelyn W. Harrell
BRYAN CAVE LEIGHTON
PAISNER
211 N. Broadway Street, Suite 3600
St. Louis, MO 63102
Telephone: (314) 259-2000
jeffrey.russell@bclplaw.com
jacob.simon@bclplaw.com
katelyn.harrell@bclplaw.com

*Counsel for Appellant-Defendant,
Cross-Appellee Argent Trust
Company*

Lars C. Golumbic
Samuel I. Levin
Theodore A. Van Beek
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., NW, Suite 1200
Washington, D.C. 20006
Telephone: (202) 861-6615
lgolumbic@groom.com
slevin@groom.com
tvanbeek@groom.com

*Counsel for Appellants-Defendants,
Cross-Appellees West Monroe
Partners, Inc., et al.*

| Save As | Clear Form |

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-2190

Short Caption: West Monroe Partners, Inc., et al. v. Daly

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 West Monroe Partners, Inc., the Board of Directors of West Monroe Partners, Inc., and the Benefits Committee of

 West Monroe Partners, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Groom Law Group, Chartered, Cassiday Schade LLP, and Morrissey Legal Group

(3)    If the party, amicus or intervenor is a corporation:

   i)    Identify all its parent corporations, if any; and

       WMC IntermediateCo, Inc. and West Monroe Enterprises, Inc.

   ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

       None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: /s/ Lars. C. Golumbic    Date: July 14, 2026

Attorney's Printed Name:  Lars C. Golumbic

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** [✔]  **No** [ ]

Address:  1701 Pennsylvania Avenue, NW, Suite 1200

   Washington, D.C. 20006

Phone Number:  (202) 861-6615    Fax Number:  (202) 659-4503

E-Mail Address: lgolumbic@groom.com

rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>26-2190</u>

Short Caption: <u>West Monroe Partners, Inc., et al. v. Daly</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>West Monroe Partners, Inc., the Board of Directors of West Monroe Partners, Inc., and the Benefits Committee</u>

<u>of West Monroe Partners, Inc.</u>

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Groom Law Group, Chartered, Cassiday Schade LLP, and Morrissey Legal Group.</u>

(3)     If the party, amicus or intervenor is a corporation:

  i)     Identify all its parent corporations, if any; and

  <u>WMC IntermediateCo, Inc. and West Monroe Enterprises, Inc.</u>

  ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

  <u>None</u>

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

  <u>N/A</u>

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

  <u>N/A</u>

Attorney's Signature: <u>/s/ Samuel I. Levin</u>     Date: <u>June 8, 2026</u>

Attorney's Printed Name: <u>Samuel I. Levin</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** ☐     **No** ☑

Address: <u>1701 Pennsylvania Avenue, NW, Suite 1200</u>

<u>Washington, D.C. 20006</u>

Phone Number: <u>(202) 861-6648</u>     Fax Number: <u>(202) 659-4503</u>

E-Mail Address: <u>slevin@groom.com</u>

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-2190

Short Caption: West Monroe Partners, Inc., et al. v. Daly

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
West Monroe Partners, Inc., the Board of Directors of West Monroe Partners, Inc., and the Benefits Committee
of West Monroe Partners, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Groom Law Group, Chartered, Cassiday Schade LLP, and Morrissey Legal Group.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        WMC IntermediateCo, Inc. and West Monroe Enterprises, Inc.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Theodore A. Van Beek    Date: June 8, 2026

Attorney's Printed Name: Theodore A. Van Beek

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** [ ]  **No** [✓]

Address: 1701 Pennsylvania Avenue, NW, Suite 1200

    Washington, D.C. 20006

Phone Number: (202) 861-6640    Fax Number:  (202) 659-4503

E-Mail Address: tvanbeek@groom.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-2190

Short Caption: Daly v. West Monroe Partners, Inc., et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Argent Trust Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Bryan Cave Leighton Paisner LLP, Litchfield Cavo LLP, Lathrop GPM LLP, O'Melveny & Myers LLP,

 Foley & Lardner LLP, Dentons US LLP

(3)    If the party, amicus or intervenor is a corporation:

   i)        Identify all its parent corporations, if any; and

     Argent Financial Group, Inc.

   ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

     Origin Bancorp, Inc. owns 10% or more of the stock of Argent Financial Group, Inc.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 None

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 None

Attorney's Signature: /s/ Jeffrey S. Russell     Date: 7/14/2026

Attorney's Printed Name:  Jeffrey S. Russell

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☑  **No** ☐

Address:  211 N. Broadway, Suite 3600

     St. Louis, MO 63102

Phone Number: 314-259-2725     Fax Number:  314-259-2020

E-Mail Address: jeffrey.russell@bclplaw.com

rev. 12/19 AK

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26 2190

Short Caption: Daly v. West Monroe Partners, Inc., et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Argent Trust Company

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Bryan Cave Leighton Paisner LLP; Litchfield Cavo LLP, Lathrop GPM LLP, O'Melveny & Myers LLP;

Foley & Lardner LLP; Dentons US LLP

(3)   If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

Argent Financial Group, Inc.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Origin Bancorp, Inc. owns 10% or more of the stock of Argent Financial Group, Inc.

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

None

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

None

Attorney's Signature: /s/ Jacob Simon     Date: 6/9/2026

Attorney's Printed Name: Jacob Simon

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐   **No** ☑

Address: 211 N. Broadway, Suite 3600

St. Louis, MO 63102

Phone Number: 314 259 2518     Fax Number: 314 259 2020

E-Mail Address: jacob.simon@bclplaw.com

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-2190

Short Caption: Daly v. West Monroe Partners, Inc., et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
  Argent Trust Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
  Bryan Cave Leighton Paisner LLP, Litchfield Cavo LLP, Lathrop GPM LLP, O'Melveny & Meyers LLP,

  Foley & Lardner LLP, Dentons US LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)      Identify all its parent corporations, if any; and

       Argent Financial Group, Inc.

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

       Origin Bancorp, Inc. owns 10% or more of the stock of Argent Financial Group, Inc.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

  None

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

  None

Attorney's Signature: /s/ Sarah Katelyn W. Harrell     Date: 6/09/2026

Attorney's Printed Name:  Sarah Katelyn W. Harrell

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐  **No** ☑

Address:  1201 W. Peachtree Street, NW, 14th Floor

  Atlanta, GA  30309

Phone Number: 404-572-6668     Fax Number:  404-572-6999

E-Mail Address: katelyn.harrell@bclplaw.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

JURISDICTIONAL STATEMENT ................................................................................1

INTRODUCTION ..........................................................................................................2

QUESTIONS PRESENTED...........................................................................................4

STATEMENT OF THE CASE.......................................................................................5

SUMMARY OF THE ARGUMENT ...........................................................................10

STANDARD OF REVIEW ..........................................................................................13

ARGUMENT ...............................................................................................................13

    I.    The District Court Erred by Certifying a Class Without
        Determining Whether the Challenged Conduct "Diminishe[d]
        the Plan Assets as a Whole." ...........................................................................13

        A.    The District Court Erred by Construing *Spano* as Only
               Requiring the Exclusion of Participants Who Benefitted
               from the MSD Transaction.................................................................15

        B.    Under *Spano*'s Standard, the District Court Could Not
               Have Certified Plaintiff's Section 502(a)(2) Claims
               Because the Plan's Assets Were Not Diminished.............................16

        C.    Requiring a Plan Injury Does Not Create "Sweeping Fiduciary
               Immunity." .......................................................................................19

        D.    The Supreme Court's Decision in *LaRue* Confirms that a
               Diminishment of the Plan's Assets is Required for a
               Section 502(a)(2) Claim. ..................................................................20

        E.    Other Circuit Courts Agree that Section 502(a)(2) Claims
               Require an Aggregate Injury to the Plan............................................21

i

II. The District Court Erred by Certifying a Class Seeking Individualized Monetary Relief Under Rule 23(b)(1)...........................................................22

    A.    The District Court Improperly Certified Plaintiff's Section 502(a)(2) Claims for Individualized Monetary Relief Under Rule 23(b)(1). .....24

    B.    *Trauernicht* is Neither "Wrong" Nor Contrary to "[S]ettled [L]aw." 25

    C.    *Trauernicht* is Not Distinguishable....................................................29

    D.    The Individualized Monetary Relief Sought Here is Not "Incidental" to Non-Monetary Relief. ...................................................................30

    E.    The Requirements of Rule 23(b)(1)(A) and (b)(1)(B) are Not Satisfied. ...................................................................................................33

CONCLUSION .................................................................................................37

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Abbott v. Lockheed Martin Corporation*,
   725 F.3d 803 (7th Cir. 2013) ...................................................................................27

*Andrews v. Chevy Chase Bank*,
   545 F.3d 570 (7th Cir. 2008) ...................................................................................22

*Barrados-Zarate v. Barr*,
   981 F.3d 603 (7th Cir. 2020) ...................................................................................27

*Bishop v. Gainer*,
   272 F.3d 1009 (7th Cir. 2001) ........................................................................... 23, 24

*Boley v. Universal Health Servs., Inc.*,
   36 F.4th 124 (3d Cir. 2022) .....................................................................................26

*Cedeno v. Sasson*,
   100 F.4th 386 (2d Cir. 2024) ...................................................................................26

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*,
   472 U.S. 559 (1985) ...................................................................................................8

*CIGNA Corp. v. Amara*,
   563 U.S. 421 (2011) .................................................................................................31

*Coyer v. Univar Sols. USA Inc.*,
   No. 1:22-cv-0362, 2022 WL 4534791 (N.D. Ill. Sept. 28, 2022) ........................32

*DeFazio v. Hollister Emp. Share Ownership Tr.*,
   612 F. App'x 439 (9th Cir. 2015) ...........................................................................32

*Ervin v. OS Rest. Servs., Inc.*,
   632 F.3d 971 (7th Cir. 2011) ............................................................................. 13, 16

*Glaser v. Wound Care Consultants, Inc.*,
   570 F.3d 907 (7th Cir. 2009) ...................................................................................22

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002).................................................................................................31

*In re Amsted Indus., Inc. ERISA Litig.*,
263 F. Supp. 2d 1126 (N.D. Ill. 2003) ..................................................................9

*In re Bendectin Prods. Liabl. Litig.*,
749 F.2d 300 (6th Cir. 1984) ...........................................................................33

*In re Dennis Greenman Sec. Litig.*,
829 F.2d 1539 (11th Cir. 1987) ................................................................ 33, 36

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) .............................................................................26

*Jefferson v. Ingersoll Int'l Inc.*,
195 F.3d 894 (7th Cir. 1999) ...........................................................................30

*Johnson v. Meriter Health Services Employee Retirement Plan*,
702 F.3d 364 (7th Cir. 2012) ...........................................................................27

*Kenseth v. Dean Health Plan, Inc.*,
610 F.3d 452 (7th Cir. 2010) ...........................................................................31

*LaMar v. H&B Novelty & Loan Co.*,
489 F.2d 461 (9th Cir. 1973) .................................................................... 34, 36

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
552 U.S. 248 (2008)................................................................................. *passim*

*Lemon v. Int'l U. of Operating Eng'rs, Loc. No. 139, AFL-CIO*,
216 F.3d 577 (7th Cir. 2000) ...........................................................................32

*McDonald v. Edward D. Jones & Co., L.P.*,
791 F. App'x 638 (8th Cir. 2020) ....................................................................26

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993).........................................................................................19

*Morgan v. Schott*,
914 F.3d 1115 (7th Cir. 2019) .........................................................................22

*Mussat v. IQVIA, Inc.*,
953 F.3d 441 (7th Cir. 2020) ...........................................................................24

iv

*Neil v. Zell*,
 275 F.R.D. 256 (N.D. Ill. 2011)..................................................................36

*Ortiz v. Fibreboard Corp.*,
 527 U.S. 815 (1999)....................................................................................36

*Peters v. Aetna Inc.*,
 2 F.4th 199 (4th Cir. 2021) .........................................................................21

*Phillips Petroleum Co. v. Shutts*,
 472 U.S. 797 (1985)....................................................................................24

*Phillips v. Sheriff of Cook Cnty.*,
 828 F.3d 541 (7th Cir. 2016) ......................................................................13

*Roth v. Sawyer-Cleator Lumber Co.*,
 16 F.3d 915 (8th Cir. 1994) ........................................................................21

*Salve Regina College v. Russell*,
 499 U.S. 225 (1991)....................................................................................13

*Shipp v. Cent. States Manufacturing, Inc.*,
 No. 5:23-cv-5215, 2026 WL 868217 (W.D. Ark. Mar. 30, 2026) .............9

*Smith v. Aon Corp.*,
 238 F.R.D. 609 (N.D. Ill. 2006)..................................................................34

*Spano v. The Boeing Co.*,
 633 F.3d 574 (7th Cir. 2011) ............................................................. *passim*

*Tilley v. TJX Cos.*,
 345 F.3d 34 (1st Cir. 2003).........................................................................36

*Trauernicht v. Genworth Fin. Inc.*,
 169 F.4th 459 (4th Cir. 2026) ............................................................ *passim*

*U.S. v. Misc. Firearms, Explosives, Destructive Devices & Ammunition*,
 376 F.3d 709 (7th Cir. 2004) ......................................................................20

*Viking River Cruises, Inc. v. Moriana*,
 596 U.S. 639 (2022)....................................................................................26

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).............................................................................. *passim*

*Wheeler v. Hronopoulos*,
  891 F.3d 1072 (7th Cir. 2018) ...............................................................17

**Statutes**

28 U.S.C. § 1292(e) ..................................................................................1

28 U.S.C. § 1331 ......................................................................................1

28 U.S.C. § 2072 ......................................................................................1

29 U.S.C. § 1023(b)(3)(A) ........................................................................5

29 U.S.C. § 1109(a) ....................................................................... 16, 19, 20

29 U.S.C. § 1132 ....................................................................................11

29 U.S.C. § 1132(a) ................................................................................19

29 U.S.C. § 1132(a)(1)(B) .......................................................................19

29 U.S.C. § 1132(a)(3) ............................................................................19

29 U.S.C. § 1132(e)(1)..............................................................................1

29 U.S.C. § 1132(f) ...................................................................................1

29 U.S.C. §§ 1132(a)(1)–(11) ............................................................ 11, 19

**Other Authorities**

7AA Fed. Prac. & Proc. Civ. § 1773 (3d ed.)..........................................33

**Rules**

Fed. R. Civ. P. 23 ............................................................................. 26, 31

Fed. R. Civ. P. 23(a)...............................................................................15

Fed. R. Civ. P. 23(b)(1)................................................................... *passim*

Fed. R. Civ. P. 23(b)(1)(A) ............................................................ 23, 33, 34, 35

Fed. R. Civ. P. 23(b)(1)(B) ........................................................................ *passim*

Fed. R. Civ. P. 23(b)(2) .................................................................................. 22, 26

Fed. R. Civ. P. 23(b)(3) .......................................................................... *passim*

Fed. R. Civ. P. 23(f) ............................................................................... 1, 11, 13

# JURISDICTIONAL STATEMENT

The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. §§ 1132(e)(1), (f) because this is a civil action arising under the Employee Retirement Income Security Act of 1974 ("ERISA").

This Court has jurisdiction over this appeal under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f) because the Supreme Court promulgated Rule 23(f) under 28 U.S.C. § 2072.

The District Court entered an order certifying a class action under Rule 23(b)(1) on March 27, 2026.  On April 10, 2026, Appellants-Defendants filed a timely petition for permission to appeal under Rule 23(f).  Appellee-Plaintiff also filed a timely petition for permission to appeal on the same day.  This Court granted both petitions on June 1, 2026.

## INTRODUCTION

This case, brought under Section 502(a)(2) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2), involves a dispute about how to allocate the fixed proceeds of a transaction that benefited the West Monroe Partners Employee Stock Ownership Plan (the "Plan"). In November of 2021, a third party purchased a 50% stake in Defendant West Monroe Partners, Inc. ("West Monroe"). Participants in the Plan at the time of the transaction received the proceeds of the sale. Plaintiff alleges Defendants breached their fiduciary duties by not sharing the proceeds from the sale with former participants who elected receive a distribution of their shares of West Monroe stock. Prior to the sale, those former participants received a lower share price that had been previously determined by the Plan's independent trustee, Defendant Argent Trust Company ("Argent"), as part of its annual valuation of West Monroe stock.

The District Court certified a class (the "Class") under Rule 23(b)(1) of: "All participants in the Plan who received a distribution in an amount determined based on the 2020 Valuation of Company stock who did not sign a class action waiver as part of any employment termination agreement with Company." *Id.* at 33. In certifying Plaintiffs' Section 502(a)(2) claims for class treatment under Rule 23(b)(1), the District Court committed two legal errors.

*First*, the District Court did not apply the approach to class certification of Section 502(a)(2) claims that this Court required in *Spano v. The Boeing Co.*, 633 F.3d 574 (7th Cir. 2011). There, this Court held that Section 502(a)(2) claims are only "potentially . . . appropriate for class treatment" if a district court first determines that the plaintiff seeks to remedy an "injury" that has "a plan-wide effect, in the sense that the loss of benefits occurring in one account diminishes the plan assets as a whole." *Id.* at 581. Only then, this Court held, could a court "turn from the law of ERISA to Rule 23." *Id.* at 582. The District Court, however, did not determine if there was such a plan-wide injury because it characterized *Spano* as being "primar[ily] . . . animat[ed]" by "concerns" about "intra-class conflict." Appx. at 23. That flawed approach alone requires reversal.

The record before the District Court made clear that there is no "plan injury" suitable for class certification. Plaintiff's claim is that Defendants should have allowed Plaintiff and a group of former employees to share in the proceeds from the sale of West Monroe that went to the Plan's remaining participants. *See* Appx. at 118. Because Plaintiff merely seeks to "redistribut[e]" the Plan's gain, he is not attempting to recover losses from a diminishment in the Plan's overall assets. *Id.* at 132. Therefore, he has not established a plan injury and the District Court should not have certified a class.

*Second*, the District Court improperly certified the class under Rule 23(b)(1). The Supreme Court has held that "individualized monetary claims belong in Rule 23(b)(3)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011). The Fourth Circuit recently confirmed that where, as here, a plaintiff brings a Section 502(a)(2) claim seeking damages for a reduction in the value of his account in a defined-contribution plan, that claim is an "'*individualized* monetary claim[]' and therefore cannot be joined . . . in a mandatory class certified under Rule 23(b)(1)," under *Wal-Mart*. *See Trauernicht v. Genworth Fin. Inc.*, 169 F.4th 459, 469 (4th Cir. 2026) (citing *Wal-Mart*, 564 U.S. at 362) (emphasis in original). The District Court nevertheless held that Section 502(a)(2) claims are "paradigmatic" examples of claims satisfying Rule 23(b)(1), Appx. at 27, because relief purportedly flows to "the plan as a whole." *Id.* at 25. But, as *Trauernicht* correctly held, that exact reasoning is inconsistent with the Supreme Court's decision in *Wal-Mart* because where, as here, the plan is a defined-contribution plan, any relief "would be paid not to the plan generally . . . but rather to the participant's *individual retirement account . . . .*" *Trauernicht*, 169 F.4th at 468.

The District Court's class certification order should be reversed.

## **QUESTIONS PRESENTED**

1.     Whether claims brought under ERISA Section 502(a)(2) may be certified only if the challenged conduct diminished the plan's total assets?

2. Whether claims for monetary relief brought under ERISA Section 502(a)(2) by a participant in a defined-contribution plan may be certified only under Rule 23(b)(3)?

**<u>STATEMENT OF THE CASE</u>**

Plaintiff Matthew Daly was employed by West Monroe between 2015 and November 2020, when he voluntarily terminated his employment with West Monroe. Appx. at 1–2, 130. During his employment, shares of West Monroe stock were allocated to his account in the Plan. *Id.* at 1–2, 135. The Plan is "a defined contribution plan" governed by ERISA. *Id.* at 1. A defined-contribution plan, unlike a "defined-benefit plan," includes individual accounts for each plan participant and "promises [each] participant the value of [his or her] individual account at retirement." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 250 n.1 (2008). By law, the shares in the Plan—including the shares allocated to Plaintiff— were valued annually by the Plan's independent trustee, Argent. *See* 29 U.S.C. § 1023(b)(3)(A) (requiring the annual valuation of shares). *See also* Appx. at 2.

Under the terms of the Plan, employees who departed West Monroe were not allowed to remain invested in West Monroe stock in the Plan indefinitely. *Id.* at 82. Rather, consistent with the terms of the Plan, in the year following their departure, departing employees were given the opportunity to elect how they would receive a distribution of their shares. *Id.*

In April 2021, Argent, with the assistance of a valuation advisor, determined the value of West Monroe's stock to be $515.18 per share as of December 31, 2020 (the "2020 Valuation"), which was a 19.2% increase in value over the 2019 valuation. *Id.* at 2, 87. Upon learning of the 2020 Valuation, Plaintiff wrote to West Monroe in May 2021 that the 19.2% increase in share price represented "impressive growth considering everything that happened in 2020"—*i.e.*, turmoil caused for consulting firms like West Monroe attributable to the COVID pandemic—and that he wanted to make sure he did not "miss the window" to elect to receive a distribution of his shares of West Monroe stock at the $515.18 share price. *Id.* at 2, 136–38, 141. Plaintiff and 145 other former employees—all of whom departed West Monroe in 2020—then elected during the summer of 2021 to take a distribution of their shares at the $515.18 share price. *Id.* at 2, 27, 82 (explaining that "[f]ormer employees" would elect how they would receive a distribution of their shares). Plaintiff received his distribution in September of 2021. *See id.* at 2.

In November 2021, a third-party investor, MSD Partners, L.P., purchased a 50% stake in West Monroe for $1,616 per share (the "MSD Transaction"). *Id.* at 2–3, 87, 136–38. That increased share price was based on "an active [mergers and acquisitions] market," West Monroe's "growth in value," and the anticipation of "continued strong performance" from West Monroe. *Id.* at 142. Indeed, the $1,616 share price came from a separate and unrelated process to Argent's annual valuation,

which determined the $515.18 share price. *See id.* Participants who held shares in their individual Plan accounts at the time of the MSD Transaction received $1,616 per share. *Id.* at 3. As Plaintiff notes in his Amended Complaint, the Plan was terminated as part of the MSD Transaction. *Id.* (citing Am. Compl. ¶¶ 74, 89). The Plan also "held approximately 546,000 unallocated shares"—*i.e.*, shares held in the Plan but not yet allocated to individual participants' accounts—which were also sold as part of the MSD Transaction for $1,616 per share. *Id.* This provided hundreds of millions in additional cash to the Plan, most of which was distributed to the participants in the Plan at the time of the MSD Transaction on a *pro rata* basis. *See id.*

After learning of the MSD Transaction, Plaintiff filed this lawsuit to recover his perceived damages—*i.e.*, that he did not receive the $1,616 share price in the MSD Transaction or the proceeds of the unallocated shares. *Id.* at 118 (arguing he received no benefit from the sale of unallocated shares), 120 (describing the alleged harm as "damages" and noting that "[c]lass members will also have different damages because they possessed different numbers of shares at the time they were cashed out"); 121 (arguing Defendants failed to "true-up" his account so that he received the $1,616 share price), 130–31, 138–39. He purported to bring his claims "in a representative capacity on behalf of the Plan under ERISA § 502(a)(2)," 29 U.S.C. § 1132(a)(2), and sought to "certify this action on behalf of the Plan and a

class of Plan participants and beneficiaries" who "received a distribution in an amount determined based on the 2020 Valuation of Company stock." Appx. at 117, 119. That proposed class contained only 146 former employees and did not include the nearly 1,350 other Plan participants, meaning over 90% of the Plan was not included. Appx. at 27. *See also id.* at 82 (explaining that former employees would elect to take distributions), 140 (showing "1345" participants in the plan as of "the end of the [2020] plan year").

As Plaintiff admitted at his deposition, he "is not seeking to represent the Plan as a whole." *Id.* at 131. He is instead attempting to "redistribut[e]" benefits from "some participants" who received the $1,616 share price to himself and other former plan participants who did not. *Id.* at 132–34. Indeed, Plaintiff's theory of the case is *not* that Defendants breached their fiduciary duties to the *Plan*, but rather that Defendants purportedly "acted to ***privilege the interests of [the] other [nearly 1,350 remaining] participants*** over the Class [*i.e.*, former participants]." *Id.* at 123 n.11 (emphasis added). *See also id.* at 140.

Defendants, of course, owed fiduciary duties to the Plan as a whole, not to the particular subgroup of participants described in the class definition. *See, e.g., Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 576 (1985) (holding that a fiduciary's "duty extends to all participants" and that the "breadth of [this] duty may result in a very different view of . . . special situations"

than the view of someone advocating for a specific group of employees, which "might compromise the broader interests of the plan as a whole"); *Shipp v. Cent. States Manufacturing, Inc.*, No. 5:23-cv-5215, 2026 WL 868217, at *9 (W.D. Ark. Mar. 30, 2026) (reaffirming, in a case involving an employee stock ownership plan, that an ERISA fiduciary's duty "is not to individual Plan Participants but to all Plan Participants or the Plan as a whole"); *In re Amsted Indus., Inc. ERISA Litig.*, 263 F. Supp. 2d 1126, 1128 (N.D. Ill. 2003) (explaining an ERISA fiduciary "owed a fiduciary duty to the ESOP, rather than the plan participants individually").

Despite alleging in the Amended Complaint that "this action may be certified as a class under Rule 23(b)(3)," Appx. at 104, and testifying that his "main goal" was "to get the maximum amount of money," *id.* at 129, Plaintiff moved to certify a class "under Rule 23(b)(1) and (b)(2) alone." *Id.* at 119 n.5.

On March 27, 2026, the District Court certified the Class under Rule 23(b)(1), which consisted of: "All participants in the Plan who received a distribution in an amount determined based on the 2020 Valuation of Company stock who did not sign a class action waiver as part of any employment termination agreement with Company." *Id.* at 33. *See also id.* at 27 n.7. The parties filed cross-petitions for permission to appeal that class certification order under Rule 23(f) on April 10, 2026, which this Court granted on June 1, 2026. *See West Monroe Partners, Inc., et al. v.*

*Daly*, No. 26-8009, Dkts. 1, 12 (7th Cir. 2026); *Daly v. West Monroe Partners, Inc., et al.*, No. 26-8010, Dkts. 1, 11 (7th Cir. 2026).

## SUMMARY OF THE ARGUMENT

The District Court's class certification order rests on two legal errors, each of which independently justify reversal.

1.      The District Court erred by certifying Plaintiff's Section 502(a)(2) claims as a class action without first determining whether the alleged breach of fiduciary duty caused a "***plan injury***" that "***diminishe[d] the plan assets as a whole***," as required by this Court's decision in *Spano*.  633 F.3d at 581 (emphasis added). *Spano* set forth a two-step approach for certifying Section 502(a)(2) claims, which first requires a determination that there is a "plan injury" before a court can "turn from the law of ERISA to Rule 23." *Id.* at 582.  Instead of following that two-step process, the District Court characterized *Spano* as being "primar[ily] . . . animat[ed]" by "concerns" about "intra-class conflict."  Appx. at 23.  From this, the District Court held that class certification was proper so long as the class definition excluded participants who benefitted from the challenged conduct.  *Id.*   That conclusion ignored *Spano*'s requirement that the district court must first determine whether there was a "plan injury."

Plaintiff has not established a "plan injury."  His theory is that he and the Class should have been permitted to share in the benefits of the MSD Transaction, at the

10

expense of the other Plan participants not included in the Class. *See* Appx. at 118. His Section 502(a)(2) claim is thus premised on how the Plan's gain would be distributed among present and former plan participants, not a diminishment of the total assets in the Plan. *Id.* His theory ignores that the Plan benefitted from the MSD Transaction, which resulted in a cash infusion into the Plan of hundreds of millions of dollars and allowed the Plan to provide the remaining participants with additional funds. *Id.* at 3.

In his brief in opposition to Defendants' Rule 23(f) petition, Plaintiff failed to even acknowledge the two-step approach *Spano* requires or its clear holding on what must be shown to constitute a "plan injury." *See West Monroe Partners, Inc., et al. v. Daly*, No. 26-8009, Dkt. 8 (7th Cir. Apr. 30, 2026) ("Resp. to Pet."). Instead, Plaintiff raised three unpersuasive arguments. *First*, he argued that there would purportedly be "sweeping fiduciary immunity" if Section 502(a)(2) claims required an injury to the plan as a whole. *See* Resp. to Pet. at 2, 13. This argument not only ignores *Spano*'s holding, but overlooks that other provisions in Section 502 would still allow plaintiffs to seek relief for breaches of fiduciary duty in the absence of a plan-wide injury. *See* 29 U.S.C. §§ 1132(a)(1)–(11). *Second*, he suggested that the Supreme Court's decision in *LaRue* "authorizes claims whenever a participant's account is impaired" regardless of whether the plan is injured. *See* Resp. to Pet. at 9. Not so. *LaRue* expressly distinguished between "individual injuries" that are not

11

actionable under Section 502(a)(2) and "plan injuries" that are actionable. *LaRue*, 552 U.S. at 256. *Third*, he contended that requiring the plan to suffer an injury to the plan's assets as a whole to sustain a Section 502(a)(2) claim has "never been adopted by any court." Resp. to Pet. at 13. Again, not so. In addition to *Spano* and *LaRue*, both the Fourth and Eighth Circuits have held that a Section 502(a)(2) claim requires a loss to the plan's assets as a whole.

2. The District Court also erred by certifying a class seeking individualized monetary relief under Rule 23(b)(1), which is inconsistent with the Supreme Court's holding that such claims "belong in Rule 23(b)(3)," because the Due Process Clause requires Rule 23(b)(3)'s notice and opt-out provisions for individualized monetary claims. *Wal-Mart*, 564 U.S. at 362. The Fourth Circuit recently confirmed that *Wal-Mart* applies to Section 502(a)(2) claims brought by participants in defined-contribution plans. *Trauernicht*, 169 F.4th at 469. The District Court nevertheless held that Section 502(a)(2) claims are "paradigmatic" examples of claims that may be certified under Rule 23(b)(1), Appx. at 27, because relief purportedly flows to "the plan as a whole." *Id.* at 25. As *Trauernicht* explained, that reasoning is inconsistent with the Supreme Court's decision in *Wal-Mart* because relief for a Section 502(a)(2) claim "would be paid not to the plan generally . . . but rather to the participant's *individual retirement account* based on the losses that particular account sustained," which makes these claims

"*individualized* monetary claim[s]" under *Wal-Mart*. *Id.* at 468 (emphasis in original).

In his brief in opposition to Defendants' Rule 23(f) petition, Plaintiff argued that *Trauernicht* was "[w]rongly decided" and contrary to "settled law," Resp. to Pet. at 23, 29, but failed to identify any contrary decision. Plaintiff's argument that *Trauernicht* is factually distinguishable is also not persuasive.

## STANDARD OF REVIEW

A district court's "legal determinations made in support of the [class certification] decision are reviewed de novo." *Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 549 (7th Cir. 2016). If the "district court applies an incorrect legal rule as part of its [class-certification] decision, then . . . the decision must be set aside." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011). Because the standard of review is *de novo* when evaluating whether the district court applied the correct legal rules, "no form of appellate deference is acceptable." *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991).

## ARGUMENT

**I.     The District Court Erred by Certifying a Class Without Determining Whether the Challenged Conduct "Diminishe[d] the Plan Assets as a Whole."**

In *Spano*, this Court held that Section 502(a)(2) claims are "potentially . . . appropriate for class treatment" only if "an injury to one account . . . qualified as a

13

plan injury." *Spano*, 633 F.3d at 581 ("To determine whether class treatment is appropriate, we must distinguish between an injury to one person's retirement account that affects only that person, and an injury to one account that qualifies as a plan injury."). This Court explained that a "plan injury" is an injury that has "a plan-wide effect, in the sense that the loss of benefits occurring in one account ***diminishes the plan assets as a whole***[.]" *Id.* (emphasis added). The District Court skipped this required first step and certified Plaintiff's Section 502(a)(2) claims without first determining whether "the plan assets as a whole" were diminished. That alone was reversible error.

As discussed below, the District Court improperly disregarded the clear "plan injury" requirement set forth in *Spano* by holding that because *Spano* was purportedly "primar[ily] . . . animat[ed]" by "concerns" about "intra-class conflict," a class could be certified so long as the class definition excluded participants who benefitted from the challenged conduct. *See* Appx. at 23. *See also infra* § I.A. Applying *Spano*'s dispositive holding to the facts here, a class cannot be certified because the Plan did not suffer an aggregate injury. *See infra* § I.B. For his part, Plaintiff ignored *Spano*'s dispositive language entirely, and instead advanced three meritless legal arguments. *See infra* §§ I.C–E.

14

**A.** **The District Court Erred by Construing *Spano* as Only Requiring the Exclusion of Participants Who Benefitted from the MSD Transaction.**

*Spano* made clear that certifying Section 502(a)(2) claims is a two-step process that first requires a threshold determination of whether "the plan assets as a whole" were "diminishe[d]," and only then may a district court "turn from the law of ERISA to Rule 23." *Spano*, 633 F.3d at 581–82. The District Court never applied *Spano*'s two-step process and never made any finding that the Plan's assets were diminished. *See generally* Appx. at 1–33. As discussed below, had it applied *Spano*'s first step, it only could have concluded that the Plan's assets were not diminished. *See infra* § I.B.

Instead, the District Court proceeded directly to *Spano*'s second step and determined whether the proposed class definition would create a "potential for intra-class conflict" that would make "class treatment . . . untenable." Appx. at 19. The District Court concluded that because "this case presents no risk that" there would be "any 'intra-class conflict of the sort that defeats both the typicality and adequacy-of-representation requirements of Rule 23(a),'" the proposed class was permissible under *Spano*. *Id.* at 23.

To be sure, *Spano* does require a district court to examine whether there are class conflicts that would defeat the typicality and adequacy requirements of Rule 23(a). *Spano,* 633 F.3d at 585-88. But *Spano* made equally clear that a district court

must *first* determine that the plan's overall assets were diminished. *Spano*, 633 F.3d at 581 (explaining that whether "employees resorting to [S]ection 502(a)(2) may properly proceed as a class under [Rule 23]" turns on whether the injury "qualifies as a plan injury," which is an injury that "diminishes the plan assets as a whole").

*Spano*'s two-step process comports with the nature of Plaintiff's Section 502(a)(2) claim. Section 502(a)(2) provides for relief under "Section [409] of" ERISA, which only allows recovery for "losses to the *plan*." 29 U.S.C. §§ 1109(a), 1132(a)(2) (emphasis added). Thus, only when an alleged loss to an individual plaintiff's account constitutes a "loss[] to the plan," *id.*—which *Spano* explains occurs when the loss "diminishes the plan assets as a whole," 633 F.3d at 581—can a plaintiff bring a claim under Section 502(a)(2).

At bottom, the District Court did not apply the correct legal standard. This Court should therefore reverse the class certification order. *See Ervin*, 632 F.3d at 976 (reversing a class certification order because "[i]f . . . the district court applies an incorrect legal rule as part of its [class-certification] decision, then . . . the decision must be set aside[.]").

**B.      Under *Spano*'s Standard, the District Court Could Not Have Certified Plaintiff's Section 502(a)(2) Claims Because the Plan's Assets Were Not Diminished.**

The undisputed facts before the District Court confirm that, under *Spano*, a class could not have been certified because there was not an injury that diminished

the Plan's overall assets. *See, e.g.*, Appx. at 3 (describing the cash infusion to the Plan from the sale). To the contrary, as Defendants argued to the District Court, permitting Plaintiff and the class members to share in the proceeds from the MSD Transaction would have "harmed participants who remained at West Monroe at the time of MSD Transaction, who would receive fewer proceeds from the deal as a result of sharing with the former employee participants." *Daly v. West Monroe Partners, Inc.*, No. 1:21-cv-6805, Dkt. 192, at *6 (N.D. Ill. May 22, 2024). Plaintiff never contested that point below, and therefore waived any ability to challenge it on appeal. *Wheeler v. Hronopoulos*, 891 F.3d 1072, 1073 (7th Cir. 2018) ("Failing to bring an argument to the district court means that you waive that argument on appeal.").

Instead of flowing from a diminishment of the Plan's overall assets, Plaintiff's claimed injury results from his complaint about how the Plan's gain was allocated among two different groups. *See id.* at 132–34. Plaintiff's position is that Defendants should have allowed Plaintiff and the Class—all of whom had left West Monroe—to share in the "proceeds from the sale of [the 564,000] unallocated shares" that were distributed to the remaining participants as part of the MSD Transaction. *Id.* at 118. Given that there were a finite number of unallocated shares, any allocation of those shares to Plaintiff and the Class would reduce the same number of shares allocated to the remaining Plan participants. That is, under

17

Plaintiff's theory, the pool of proceeds from the unallocated shares would have needed to be divided between both the remaining Plan participants and the Class of former employees; the Plan's total assets would have remained the same, with the distribution of assets being the only change. In that way, Plaintiff seeks to "redistribut[e]" part of the Plan's gain from "some participants" to himself and other former Plan participants *at the dollar-for-dollar expense of non-Class active plan participants*, not to recover losses from a diminishment in the Plan's overall assets. *Id.* at 132.

Plaintiff improperly sought to manufacture the "plan injury" *Spano* requires by gerrymandering a class of only former participants, while ignoring the enormous benefits the MSD Transaction gave to the Plan as a whole. *See* Appx. at 119 (seeking to certify a class of only those former participants who had been cashed out). Far from harming the Plan, the MSD Transaction resulted in an enormous infusion of hundreds of millions of dollars of cash into the Plan and the Plan was therefore able to provide the Plan's active participants with extra proceeds from the sale of unallocated shares. *Id.* at 3 (explaining there were 564,000 shares purchased at $1,616 per share). This is the antithesis of a plan-wide injury that could be certified as a class action.

## C. Requiring a Plan Injury Does Not Create "Sweeping Fiduciary Immunity."

Plaintiff sought to avoid *Spano* by arguing that Defendants' reliance on *Spano* would grant "sweeping fiduciary immunity" and "create a loophole for fiduciaries who take from some participants to benefit others." Resp. to Pet. at 2, 13. Not so. Plaintiff ignored ERISA's "carefully crafted and detailed enforcement scheme," *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993), which includes eleven different categories of claims that may be brought (some of which include further subcategories). *See* 29 U.S.C. §§ 1132(a)(1)–(11).

Plaintiff's claims are brought under Section 502(a)(2), which is only one of the eleven categories in Section 502(a). *See* 29 U.S.C. § 1132(a)(2). Among other categories, participants who believe they have not received all of the benefits they are owed may bring a claim under Section 502(a)(1)(B), and participants may also seek redress for "any act or practice which violates any provision of this subchapter [including the fiduciary duty provisions] or the terms of the plan" under Section 502(a)(3). *Id.* §§ 1132(a)(1)(B), (a)(3).

Plaintiff's strategic decision to bring a claim and seek class certification under Section 502(a)(2) instead of one of these alternative provisions does not create any "fiduciary immunity." Resp. to Pet. at 2. By its plain terms, Section 502(a)(2) allows for relief only under "Section [409] of" ERISA, which in turn provides for the recovery of "losses to the *plan*." 29 U.S.C. §§ 1109(a), 1132(a)(2) (emphasis

19

added).  Plaintiff's position that there need not be a loss to "the plan's total assets," Resp. to Pet. at 12, renders superfluous Section 409(a)'s explicit requirement that the relief be for "losses to the plan[.]"  29 U.S.C. § 1109(a).  *See also United States v. Misc. Firearms, Explosives, Destructive Devices & Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004) ("We will not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous.").

### D. The Supreme Court's Decision in *LaRue* Confirms that a Diminishment of the Plan's Assets is Required for a Section 502(a)(2) Claim.

Plaintiff argued the Supreme Court's decision in "*LaRue* authorizes claims whenever a participant's account is impaired."  Resp. to Pet. at 9.  Not so.  *LaRue* held that an individual plan participant could bring a claim under Section 502(a)(2) for individual relief only if there is a "plan injury" as "distinct from" an "individual injury."  552 U.S. at 256 (explaining that Section 502(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries").  A "plan injury" in this context is an injury that harms an individual account while also "diminish[ing] plan assets."  *LaRue*, 552 U.S. at 256.  Plaintiff's interpretation of *LaRue* would render meaningless the Supreme Court's clear distinction between the "plan injuries" that "diminish[] plan assets" and "individual injuries," which are not actionable under Section 502(a)(2).  *Id.*

**E. Other Circuit Courts Agree that Section 502(a)(2) Claims Require an Aggregate Injury to the Plan.**

Plaintiff wrongly contended that the requirement that a plan must suffer an aggregate injury to sustain a Section 502(a)(2) claim has "never been adopted by any court." Resp. to Pet. at 13. But numerous other courts, in addition to *Spano* and *LaRue*, have held that there must be an overall injury to the plan to bring a claim under Section 502(a)(2). *See, e.g., Peters v. Aetna Inc.*, 2 F.4th 199, 216 n.8, 225 (4th Cir. 2021) (holding that, to determine whether there is a loss to the plan in connection with a Section 502(a)(2) claim, a court must "determine[] whether . . . the Plan suffered a loss in the aggregate[,]" which is a "separate[]" "analysis" from whether an individual participant "suffered a financial loss");[1] *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 919–20 (8th Cir. 1994) ("Section 409 provides that trustees may be personally liable, but only for losses '*to the plan,*' *id.* § 1109(a) (emphasis added); if individual plan participants suffer losses, but the plan does not, the trustee is not personally liable for damages under § 409.") (footnote omitted). Plaintiff has cited ***no*** contrary case law.

---

[1] The Fourth Circuit in *Peters* repeatedly discussed "whether Peters or the Plan had a net 'gain'[,]" and "what Peters and the Plan actually paid," but the court made clear these are to be "analyz[ed] separately . . . to determine if either, irrespective of the other, suffered a financial loss." 2 F.4th at 223, 225. The reason for this separate analysis is that the determination of whether an individual experienced a "net loss" applied to claims "under § 502(a)(1) and (3)," while the determination at the plan level applied to claims "under § 502(a)(2)." *Id.* at 227.

21

This Court does "not lightly conclude that [its] sister circuits are wrong" and "requires quite solid justification" to create "a circuit split." *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 576 (7th Cir. 2008). By the same token, this Court does not "reverse [its] precedents lightly," *Morgan v. Schott*, 914 F.3d 1115, 1120 (7th Cir. 2019), and typically does so only when this Court's precedent "remains a minority one among other circuits," is inconsistent with a later issued decision of the Supreme Court, or "an intracircuit conflict exists." *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 915–16 (7th Cir. 2009). Plaintiff has offered no persuasive justification for creating a circuit split or reconsidering *Spano* given that it is consistent with Supreme Court precedent and decisions from the Eighth and Fourth Circuits. *See also supra* § I.C.

## II. The District Court Erred by Certifying a Class Seeking Individualized Monetary Relief Under Rule 23(b)(1).

Claims that seek individualized monetary relief "belong in Rule 23(b)(3)." *Wal-Mart*, 564 U.S. at 362. That is because Rule 23(b)(3) provides "greater procedural protections," which are constitutionally required by the Due Process Clause "with respect to each class member's individualized claim for money . . . ." *Id.* at 362–63 (explaining that Rule 23(b)(3), unlike Rule 23(b)(1) or (b)(2) requires, among other things, mandatory notice and opt-out rights afforded to absent class members); *Bishop v. Gainer*, 272 F.3d 1009, 1017–18 (7th Cir. 2001) (holding that "if money damages, which are more than incidental to equitable relief, are sought in

a particular case, certification should be made under Rule 23(b)(3), which provides for notice to class members and provides them with an opportunity to opt out of the suit"). The Fourth Circuit recently confirmed that this rule applies to Section 502(a)(2) claims in the context of defined-contribution plans. *See Trauernicht*, 169 F.4th at 469.

The District Court reached a different conclusion, following largely conclusory district court decisions holding that Section 502(a)(2) claims are a "paradigmatic" example of the type of claim that may be certified under Rule 23(b)(1). Appx. at 27. That broad statement is erroneous in the context of a defined-contribution plan because, as *Trauernicht* held, it ignores that any relief for Section 502(a)(2) claims is paid to each individual's account based on the losses sustained by each account—such that the claims are for individualized monetary relief and subject to *Wal-Mart*'s requirement that the class may only be certified under Rule 23(b)(3). *See infra* § II.A. Plaintiff raised three other arguments to attempt to undermine or distinguish *Trauernicht*, but each fails. *See infra* §§ II.B–D. Finally, the District Court erred in certifying a Rule 23(b)(1) class because neither Rule 23(b)(1)(A) or (b)(1)(B) allow class certification in this circumstance. *See infra* § II.E.

**A.** **The District Court Improperly Certified Plaintiff's Section 502(a)(2) Claims for Individualized Monetary Relief Under Rule 23(b)(1).**

Both *Wal-Mart* and Seventh Circuit precedent require that claims for individualized monetary relief be certified under Rule 23(b)(3) rather than under Rule 23(b)(1). *See Wal-Mart*, 564 U.S. at 362; *Bishop*, 272 F.3d at 1017–18; *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 448 (7th Cir. 2020). That is because when "a class action [is] predominantly for money damages[,]" the "absence of notice and opt out" procedures—as afforded by Rule 23(b)(3)—"violates due process." *Wal-Mart*, 564 U.S. at 363 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)). Thus, the Supreme Court explained that "individualized claim[s] for money" require the procedural protections of Rule 23(b)(3). *Id.* at 362–63.

As the Fourth Circuit confirmed in *Trauernicht*, this rule applies to Section 502(a)(2) claims where, as here, they are brought on behalf of defined-contribution plans. *Trauernicht*, 169 F.4th at 467–70. The Fourth Circuit explained that, in the context of defined-contribution plans, a plaintiff is permitted to bring an action under Section 502(a)(2) "to recover 'for fiduciary breaches that impair the value of plan assets *in a participant's individual account*,'" even if other plan accounts are not impacted, because "the assets of the plan are allocated to participants' individual accounts." *Id.* (quoting *LaRue*, 552 U.S. at 256) (emphasis in original). Accordingly, if a plaintiff recovers on a Section 502(a)(2) claim, "such recovery

would be paid . . . to the participant's *individual retirement account* based on the losses that particular account sustained." *Id.* at 468 (emphasis in original). It therefore concluded that where, as here, defined-contribution plan participants assert Section 502(a)(2) claims that are aggregated into a class, they are simply bringing a series of "*individualized* monetary claim[s]" subject to *Wal-Mart*'s rule that the class can be certified under only Rule 23(b)(3). *Trauernicht*, 169 F.4th at 469 (emphasis in original).

The District Court did not mention *Wal-Mart*, evaluate whether Plaintiff primarily sought individualized monetary relief, or discuss the constitutional due process concerns implicated by aggregating individualized monetary claims in a mandatory class without notice and opt-out procedures. *See* Appx. at 25–27. Instead, it reasoned that since "[c]lass actions under ERISA are commonly certified under" Rule 23(b)(1), certification under Rule 23(b)(1) was appropriate here too. *Id.* at 25 (internal quotation marks omitted). That reasoning simply cannot be squared with the Supreme Court's decision in *Wal-Mart*.

**B.** ***Trauernicht* is Neither "Wrong" Nor Contrary to "[S]ettled [L]aw."**

Plaintiff argued that *Trauernicht* "[i]s [w]rongly [d]ecided" and contrary to "settled law." Resp. to Pet. at 23, 29. But there is simply no such "settled law" which supports Plaintiff's position—to the contrary, Plaintiff failed to identify a single case that addressed *Wal-Mart* in the context of a defined-contribution plan

and came to a different conclusion than *Trauernicht*. Each of Plaintiff's four attempts to discredit *Trauernicht* are unpersuasive.

*First*, Plaintiff relied on a Third Circuit decision that pre-dates *Wal-Mart* and merely followed earlier district court cases without discussing the differences in procedural protections between Rule 23(b)(3) and Rules 23(b)(1) or (b)(2). *See* Resp. to Pet. at 19-20; *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009).[2] *Trauernicht* considered and rejected the portion of *Schering Plough* on which Plaintiff relies. *See Trauernicht*, 169 F.4th at 466 (quoting *Schering Plough*, 589 F.3d at 604). Because *Schering Plough* contains no persuasive reasoning, Plaintiff argued that it is purportedly "[c]onsistent" with cases from the Supreme Court and Second Circuit that did not even discuss Rule 23 and instead addressed the enforceability of arbitration provisions. *See* Resp. to Pet. at 18–19 (citing *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 657 (2022); *Cedeno v. Sasson*, 100 F.4th 386, 404 (2d Cir. 2024)).

*Second*, Plaintiff relied on two cases from this Court, neither of which support his position. *See* Resp. to Pet. at 24–25 (citing *Abbott v. Lockheed Martin*

---

[2] The Third Circuit likewise did not discuss *Wal-Mart* or consider the differences in procedural protections in subsequently adhering to *Schering Plough*. *See Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 136 (3d Cir. 2022); Resp. to Pet. at 19. Nor did the Eighth Circuit's two-paragraph unpublished per curiam opinion that Plaintiff included in the same string cite. *See McDonald v. Edward D. Jones & Co., L.P.*, 791 F. App'x 638, 640 (8th Cir. 2020).

26

*Corporation*, 725 F.3d 803 (7th Cir. 2013); *Johnson v. Meriter Health Services Employee Retirement Plan*, 702 F.3d 364, 372 (7th Cir. 2012)). *Abbott* did not mention *Wal-Mart* or discuss the issue at all and it is well-established that "[c]ourts generally are limited to addressing and resolving the arguments made to them." *Barrados-Zarate v. Barr*, 981 F.3d 603, 605 (7th Cir. 2020). And *Johnson* confirmed that *Wal-Mart* applies with full force to ERISA claims, but held that, in the context of participants in "*a defined benefit plan*" who were "at least initially, [only] seeking a reformation of the . . . pension plan," that it was possible that any monetary relief that would flow from "the text of the reformed plan" *may* be "incidental." *Johnson*, 702 F.3d at 366, 369, 371 (emphasis added). *Johnson* is obviously not inconsistent with *Trauernicht*, which is specific to defined-contribution plans and discussed, at length, the differences between defined-contribution plans and defined-benefit plans. *See Trauernicht*, 169 F.4th at 466–71. Moreover, as discussed below, the relief Plaintiff seeks here is clearly not merely incidental. *See infra* § II.D.

*Third*, Plaintiff tried to rewrite *Wal-Mart* by arguing the Supreme Court "express[ly] approv[ed] of certifying . . . claims for individualized relief under Rule 23(b)(1)" because it referred to "limited fund cases" certifiable under Rule 23(b)(1). Resp. to Pet. at 22–23. To the contrary, Plaintiff again ignored the dispositive language where the Supreme Court held that claims for individualized monetary

relief could not be certified under Rule 23(b)(1): "[U]nlike *(b)(1) and (b)(2) classes*, the (b)(3) class is not mandatory . . . . *Given that structure*, we think it clear that individualized monetary claims belong in Rule 23(b)(3)." *Wal-Mart*, 564 U.S. at 362 (emphasis added).

*Finally*, Plaintiff suggested that *LaRue* requires disregarding the Fourth Circuit's opinion in *Trauernicht* because *LaRue* "explain[ed]" that Section 502(a)(2) claims "are plan claims" seeking to recover the "impaired . . . value of plan assets." Resp. to Pet. at 23–24. But regardless of on whose behalf the claims are brought, the assets in "a participant's individual account are plan assets," so a Section 502(a)(2) claim seeking to recover "losses sustained by the plan" is seeking individualized relief to restore "the plan assets *held in the plaintiff's individual account*." *Trauernicht*, 169 F.4th at 469 (emphasis in original). "[A]ny recovery" of those losses "would be payable to those individual accounts," not the plan as a whole, which makes the claims individual claims. *Id.* at 470. The Fourth Circuit correctly explained that *LaRue* supports its conclusion that Section 502(a)(2) claims in a defined-contribution plan are individualized monetary claims because *LaRue* contemplated a single, individualized monetary claim under Section 502(a)(2), and *LaRue* "recognize[d]" that "several plaintiffs may end up bringing their own" individual actions. *Id.* at 470 (citing *LaRue*, 552 U.S. at 256). Plaintiff ignored *Trauernicht*'s reasoning, its discussion of *LaRue*, and never addressed that

28

amalgamating such individual monetary claims under Rule 23(b)(1) would create constitutional problems under the Due Process clause. *See id.* at 472. *See also supra* § II.A.

### C. *Trauernicht* is Not Distinguishable.

Plaintiff also argued that *Trauernicht* is distinguishable because this "case more closely resembles" a defined-benefit plan where a plaintiff brings a claim over "'a fiduciary's egregious mismanagement'" that "'*similarly affects* the members of a large class of beneficiaries'" who could not "'simply seek a pro-rata share of the'" recovery. Resp. to Pet. at 25–26 (quoting *Trauernicht*, 169 F.4th at 468) (emphasis in original). But the distinction *Trauernicht* drew between defined-contribution plans and defined-benefit plans was that, in the defined-contribution plan context, participants are entitled to receive an individualized *pro rata* share of any relief paid into the plan because each participant's benefits are "based solely upon the amount held in his individual account . . . ." *Id.* at 468–69. By contrast, in the defined-benefit plan context, participants' benefits are "defined and fixed," so any recovery to the plan would not result in any individual receiving a *pro rata* share of the recovery. *Id.* at 467–68. The defined-contribution plan here, Appx. at 1, functions exactly as the plan at issue in *Trauernicht*: any relief would be paid to participants on a *pro rata* basis based on the losses attributable to their individual account. *Id.* at 135. *See also* Resp. to Pet. at 1 (explaining Plaintiff seeks relief that will "be

distributed *pro rata* by the Plan to himself and 145 other Plan participants").

**D. The Individualized Monetary Relief Sought Here is Not "Incidental" to Non-Monetary Relief.**

*Wal-Mart* left open the possibility that a claim for damages could be certified outside of Rule 23(b)(3) if "the monetary relief is . . . incidental to . . . injunctive or declaratory relief." *Wal-Mart*, 564 U.S. at 360. To the extent Plaintiff has suggested that the monetary relief he seeks is incidental and flows from relief to the plan, Resp. to Pet. at 15, his argument is wrong for three reasons.

*First*, the purpose of this suit is monetary relief not injunctive or declaratory relief. By his own testimony, Plaintiff's "main goal" in this case is "to get the maximum amount of money," and he has requested tens of millions of dollars in damages and over $100,000 per class member. Appx. at 127, 129. Defendants are not aware of, and Plaintiff has not identified, any case that has ever held that monetary relief of this magnitude is "so tangential that . . . the due process clause does not require notice," particularly when monetary relief is almost all of what plaintiff seeks. *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999) ("When substantial damages have been sought, the most appropriate approach is that of Rule 23(b)(3), because it allows notice and an opportunity to opt out."). *See also supra* § II.A (discussing the due process clause concerns with aggregating the individualized monetary claims here).

*Second*, Plaintiff attempted to disguise his monetary relief by referring to it by various equitable names, but that does not transform those claims from individualized monetary relief into relief appropriate for Rule 23(b)(1) certification. *See Wal-Mart*, 564 U.S. at 365 (explaining that "it is irrelevant" whether the "award is equitable in nature" because Rule 23 "does not speak of 'equitable' remedies generally but of injunctions and declaratory judgments"). In his own words, Plaintiff suggested any monetary relief here is incidental and appropriate for Rule 23(b)(1) certification, Resp. to Pet. at 15, because he seeks "surcharge, restitution, constructive trust, and accounting for the Plan." Resp. to Pet. at 18. Each of these remedies *are* monetary relief. *See Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 482 (7th Cir. 2010) ("Restitution, which holds out the prospect of monetary relief to the plaintiff, can be either legal or equitable in nature."). *See also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (explaining that "a plaintiff could seek restitution *in equity*" through "a constructive trust") (emphasis in original); *id.* at 214 n.2 (explaining "an accounting for profits" is "a form of equitable restitution"); *CIGNA Corp. v. Amara*, 563 U.S. 421, 442 (2011) (explaining "surcharge" is an "exclusively equitable" "monetary remedy against a trustee"). Thus, *Wal-Mart*'s rule applies equally to these remedies as to any other type of monetary relief. *See Wal-Mart*, 564 U.S. at 365.

31

*Third*, Plaintiff's request for monetary relief cannot be called incidental to any non-monetary relief because there is no non-monetary relief that can issue. The *only* non-monetary relief Plaintiff even purports to seek is to prospectively "remove" the Plan's fiduciaries and to "reform the Plan." Resp. to Pet. at 9. But because Plaintiff is a former participant, he lacks standing to seek prospective relief, whether that be removing the Plan's fiduciaries or reforming the Plan. *DeFazio v. Hollister Emp. Share Ownership Tr.*, 612 F. App'x 439, 441 (9th Cir. 2015) ("[T]he Plan Participants, who have already cashed out of the Plan, lack Article III standing as to redressability vis-à-vis their claims for prospective equitable relief."); *Coyer v. Univar Sols. USA Inc.*, No. 1:22-cv-0362, 2022 WL 4534791, at *4 (N.D. Ill. Sept. 28, 2022) (finding that "plaintiffs lack standing to seek prospective injunctive relief" because "[p]laintiffs were former, not present, Plan participants when they initiated this lawsuit"). Moreover, because the Plan has been terminated, Appx. at 3, there is no Plan to reform even if Plaintiff had standing for prospective relief. In any event, these requests are incidental to Plaintiff's "main goal" of monetary relief, not the other way around because no monetary relief will issue from the removal of the Plan's fiduciaries or the reformation of a now non-existent Plan. *Id.* at 129. *See also Lemon v. Int'l U. of Operating Eng'rs, Loc. No. 139, AFL-CIO*, 216 F.3d 577, 581 (7th Cir. 2000) (explaining "incidental" damages are "damages that flow directly from . . . the claims forming the basis of the injunctive or declaratory relief").

**E.    The Requirements of Rule 23(b)(1)(A) and (b)(1)(B) are Not Satisfied.**

In addition to the binding precedent that forecloses certification under Rule 23(b)(1), *see Wal-Mart*, 564 U.S. at 362, the text of that Rule compels the same conclusion on the facts here.  By its text, Rule 23(b)(1) allows class certification in two situations through its two sub-categories.  *See* Fed. R. Civ. P. 23(b)(1)(A), (b)(1)(B).  Because neither of Rule 23(b)(1)'s two subsections allow class certification here, the District Court's order certifying a Rule 23(b)(1) class was erroneous.

*First*, a court may certify a Rule 23(b)(1)(A) class only if inconsistent rulings "would establish incompatible standards of conduct for the party opposing the class."  Fed. R. Civ. P. 23(b)(1)(A).  "This requires more than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts."  7AA Fed. Prac. & Proc. Civ. § 1773 (3d ed.); *In re Bendectin Prods. Liabl. Litig.*, 749 F.2d 300, 305 (6th Cir. 1984) ("The fact that some plaintiffs may be successful in their suits against a defendant while others may not is clearly not a ground for invoking Rule 23(b)(1)(A).").  Because inconsistent monetary awards are not sufficient to invoke Rule 23(b)(1)(A), courts generally refuse certification under Rule 23(b)(1)(A) when the plaintiff primarily seeks monetary relief.  *In re Dennis Greenman Sec. Litig.*, 829 F.2d 1539, 1545 (11th Cir. 1987) ("Many courts . . . have held that Rule 23(b)(1)(A)

does not apply to actions seeking compensatory damages" because if cases for monetary relief "can be certified under Rule 23(b)(1)(A), then all actions could be certified under the section, thereby making the other sub-sections of Rule 23 meaningless, particularly Rule 23(b)(3).") (collecting cases). *See also LaMar v. H&B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973) ("Infrequently, if ever, will [a defendant be required to follow an inconsistent course of continuing conduct] when the action is for money damages.").

With respect to Rule 23(b)(1)(A), the District Court opined that relief for a Section 502(a)(2) claim flows to "the plan as a whole" and that "defendant-fiduciaries are entitled to consistent rulings regarding" an ERISA plan, which meant that Rule 23(b)(1)(A) had been satisfied because Defendants were at "risk of inconsistent or varying adjudications with respect to individual members." Appx. at 26 (quoting *Smith v. Aon Corp.*, 238 F.R.D. 609, 615 (N.D. Ill. 2006) (internal quotation marks omitted)).

As *Trauernicht* explained, this analysis is wrong. *See Trauernicht*, 169 F.4th at 466 (rejecting plaintiffs' argument that Section 502(a)(2) claims could be certified under Rule 23(b)(1) as "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class"). "[C]lass actions properly certified under Rule 23(b)(1)" are those classes where "individual adjudications would be

34

*impossible or unworkable.*"  *Id.* at 471 (quoting *Wal-Mart*, 564 U.S. at 361) (emphasis in original).

Section 502(a)(2) claims in the context of defined-contribution plans like the one here do not present impossible or unworkable individual adjudications because the nature of the claim is for individualized monetary relief, such that "a single participant can bring an action . . . to recover 'for fiduciary breaches that impair the value of plan assets in his individual account.'"  *Id.* at 470–72 (quoting *LaRue*, 552 U.S. at 256).  By the same token, "several plaintiffs may end up bringing their own actions" with no problem because in a defined-contribution plan, "any recovery would be payable to those individual accounts, not to the participants directly" or to the Plan.  *Id.* at 470.

The District Court was wrong to conclude that the potential payment of different amounts to different class members justifies the use of Rule 23(b)(1)(A)— to the contrary, such differing payments are standard of a class action for individualized monetary relief that cannot be certified under Rule 23(b)(1).  *See Trauernicht*, 169 F.4th at 468–69 (explaining the claims were individualized monetary relief because "the loss . . . to each individual account in the plan [which would receive relief] . . . would vary significantly").

*Second*, certification under Rule 23(b)(1)(B) is appropriate only where the adjudication of an individual's claim "would be dispositive of the interests of the

35

other members not parties to the individual adjudications." Fed. R. Civ. P. 23(b)(1)(B). This rule generally applies where there is a limited pool of funds for recovery, meaning that the recovery by individual plaintiffs could jeopardize the ability of later plaintiffs to recover due to a lack of funds. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999).

The limited fund rationale described by *Ortiz* was not invoked or relied upon by the District Court. *See* Appx at 25–27. Instead of analyzing this case as a limited fund case, the District Court relied exclusively on the fact that "a victory" on a Section 502(a)(2) claim "by one plan member would necessarily be a victory for all plan members[,]" which would "be dispositive of the interests of the other members not parties to the individual adjudications." *Id.* at 27 (quoting *Neil v. Zell*, 275 F.R.D. 256, 268 (N.D. Ill. 2011)).

The law is clear, however, that Rule 23(b)(1)(B) requires more than the potential precedential effect of a decision because the alternative would always justify certification. *See Tilley v. TJX Cos.*, 345 F.3d 34, 42 (1st Cir. 2003) ("[W]e conclude that the effect of stare decisis, standing alone, will not justify class certification under Rule 23(b)(1)(B)."). *See also LaMar*, 489 F.2d at 467 (explaining that if "the stare decisis consequences of an individual action" could supply the elements for Rule 23(b)(1)(B) class treatment, "the invocation of Rule 23(b)(1)(B) [would be] unchallengeable"); *In re Dennis Greenman*, 829 F.2d at 1546 ("It is

settled that the possibility that an action will have either precedential or stare decisis effect on later cases is not sufficient to satisfy Rule 23(b)(1)(B).").

Moreover, because the Plan has been terminated, there is no injunctive or other relief that could issue that might dispose of other individual's interests, which Plaintiff would lack Article III standing to pursue in any event. *See* Appx. at 3. *See also supra* at 32. In sum, class certification under Rule 23(b)(1)(B) is improper here.

## **CONCLUSION**

This Court should reverse the District Court's class certification order.

Dated: July 13, 2026

Respectfully submitted,

*/s/ Lars C. Golumbic*

| | |
|---|---|
| Jeffrey Russell | Lars C. Golumbic |
| Jacob Simon | Samuel I. Levin |
| Katelyn W. Harrell | Theodore A. Van Beek |
| BRYAN CAVE LEIGHTON PAISNER | GROOM LAW GROUP, CHARTERED |
| 211 N. Broadway Street, Suite 3600 | 1701 Pennsylvania Ave., NW, Suite 1200 |
| St. Louis, MO 63102 | Washington, DC 20006 |
| Telephone: (314) 259-2000 | Telephone: (202) 861-6615 |
| jeffrey.russell@bclplaw.com | lgolumbic@groom.com |
| jacob.simon@bclplaw.com | slevin@groom.com |
| katelyn.harrell@bclplaw.com | tvanbeek@groom.com |

*Counsel for Appellant-Defendant, Cross-Appellee Argent Trust Company*

*Counsel for Appellants-Defendants, Cross-Appellees West Monroe Partners, Inc., et al.*

# CERTIFICATE OF COMPLIANCE

1. The Appellants' Opening Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c) because it contains 8,718 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. The Appellants' Opening Brief complies with the typeface requires of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in 14-point Times New Roman font.

Dated: July 13, 2026        */s/ Lars C. Golumbic*
             Lars C. Golumbic

# CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2026, I electronically filed the Appellants'

Opening Brief through the CM/ECF system for the United States Court of Appeals

for the Seventh Circuit consistent with Federal Rule of Appellate Procedure 25(c)(2).


Dated: July 13, 2026                              */s/ Lars C. Golumbic*
                                                  Lars C. Golumbic



**SHORT JOINT APPENDIX**

## ATTACHED SHORT JOINT APPENDIX

### Table of Contents

| Document | Page | Original Record |
|---|---|---|
| Table of Contents | Appx. i | N/A |
| Circuit Rule 30 Certification | Appx. iii | N/A |
| Opinion and Order (entered March 27, 2026) | Appx. 1 | Dkt. 277 |

## SEPARATE JOINT APPENDIX

### Table of Contents

| Document | Page | Original Record |
|---|---|---|
| Table of Contents | Appx. i | N/A |
| Circuit Rule 30 Certification | Appx. iii | N/A |
| Docket Report | Appx. 34 | N/A |
| Plaintiff's First Amended Complaint | Appx. 70 | Dkt. 87 |
| Excerpts from Plaintiff's Memorandum in Support of His Motion for Class Certification | Appx. 117 | Dkt. 149 |
| Excerpts from Plaintiff's Reply in Support of His Motion for Class Certification | Appx. 123 | Dkt. 194 |
| Excerpts from Plaintiff's Initial Rule 26(a) Disclosures | Appx. 127 | Dkt. 192-9 |

| | | |
|---|---|---|
| Excerpts from Plaintiff Matthew Daly's Deposition Transcript | Appx. 128 | Dkt. 148-4 |
| Excerpt of the West Monroe Employee Stock Ownership Plan's 2020 Form 5500 | Appx. 140 | Dkt. 154-3 |
| Excerpt of a May 4, 2021 Email Between Plaintiff Matthew Daly and a West Monroe Employee | Appx. 141 | Dkt. 192-2 |
| Excerpt of Argent Trust Company's September 30, 2021 ESOP Committee Meeting Minutes | Appx. 142 | Dkt. 192-8 |
| Agreement between West Monroe Partners, LLC and Jamie Mize | Appx. 143 | Dkt. 192-16 |

# CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30

Pursuant to Circuit Rule 30(d), I certify that the short joint appendix attached to the brief contains all of the materials required by Circuit Rule 30(a).  I further certify that there are no materials within the scope of Circuit Rule 30(b).  Together, the short joint appendix and the separate joint appendix contain all of the materials required by Circuit Rules 30(a) and 30(b), as well as the materials required by Federal Rule of Appellate Procedure 30.


Dated: July 13, 2026            */s/ Lars C. Golumbic*
Lars C. Golumbic

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MATTHEW DALY, on behalf of himself
and all others similarly situated,

    Plaintiff,

      Case No. 21 CV 6805

    v.

      Judge John Robert Blakey

WEST MONROE PARTNERNS INC.
et. al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(1) or, in the alternative, (b)(2). [148], [188]. Defendants, in a joint brief, oppose the motion. [192]. For the reasons explained below, the Court grants Plaintiff's motion under Rule 23(b)(1).

## I. Background

Plaintiff Matthew Daly was a consultant and employee of West Monroe Partners, Inc. from June 2015 to November 2020. [87] ¶ 12. West Monroe Partners, Inc. ("West Monroe" or "Company") is a "digital consulting firm" incorporated in Delaware and headquartered in Chicago, Illinois. *Id.* ¶ 13. Plaintiff Daly participated in the West Monroe Employee Stock Ownership Plan (the "Plan"), a defined contribution plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2) and governed Act under ERISA § 4(a), 29 U.S.C. § 1003(a). *Id.* ¶ 33. The Plan was designed to invest primarily in Company stock and hold that stock in a trust for the

1

**Appx. 001**

benefit of Plan participants—current and former employees. *Id.* ¶¶ 1, 33. West Monroe administered the Plan through the Board and the Committee (West Monroe, the Board, and the Committee, collectively referred to as the "West Monroe Defendants"). *Id.* ¶ 15. Argent Trust Company (a Tennessee corporation headquartered in Nashville, Tennessee and a defendant in this case) was the Plan's Trustee. *Id.* ¶ 16.

In April 2021, the Trustee completed an annual valuation of the Company stock held by the Plan ("2020 Valuation"). *Id.* ¶ 42. Plaintiff alleges this valuation constituted a breach of Defendants' fiduciary duties, because the valuation was too low. [148] at 3. Defendants announced the same month that, based upon the 2020 Valuation, the value of Company stock as of December 31, 2020, was $515.18 per share. [87] ¶ 42.

Plaintiff left his employment at the Company on November 9, 2020. *Id.* ¶ 12. Between June 11, 2021, and August 9, 2021, Plaintiff elected to take a distribution of his account balance from the Plan, to be executed in late September or October of 2021. *Id.* ¶ 84. Other members of the class did so as well, and, collectively, these participants in the Plan "held a vested beneficial interest in approximately 27,960 shares of Company stock." *Id.* Around September 21, 2021, the Company purchased those shares at a price of $515.18 per share "based on the 2020 Valuation," for "a total value of approximately $14,404,808." *Id.* ¶¶ 84, 85.

On October 5, 2021, about three weeks later, West Monroe sold 50% of the Company to MSD Partners, L.P. (the "MSD Transaction"), a private equity firm, at a

2

**Appx. 002**

price of $1,616 per share. *Id.* ¶¶ 73, 88. In November 2021, West Monroe finalized the sale and terminated the Plan. *Id.* ¶¶ 74, 89. The remaining Plan participants received a price of $1,616 per share for the stock held in their Plan accounts. *Id.* ¶¶ 73, 74, 88, 89. The Plan additionally "'held approximately 564,000 unallocated shares—i.e., shares held in the Plan but not allocated to individual participants' accounts—which were sold as part of the MSD Transaction." [192] at 5 (citing [88] ¶ 89 n.15; [144] ¶ 89). "Most of the proceeds from the sale of the unallocated shares was distributed to the remaining participants in the Plan at the time on a pro rata basis, but $50 million of those proceeds remains in the Plan in an interest-bearing account." *Id.* (citing [54-5] § 16.5(e); [132] at 8). "If not paid in connection with a claim, the $50 million will be distributed to the West Monroe employees who still have accounts in the Plan (a group that does not include Plaintiff or anyone in the putative Class)." *Id.* (citing [54-4] at § 16.5(e)).

The West Monroe Defendants admit that "they did not make disclosures to Plaintiff" regarding the" sale, "nor the results of any valuation that occurred after the 2020 Valuation, nor any offer made by a third party to buy shares of Company stock, nor the fact that the fair market value of Company stock exceeded the 2020 Valuation," nor "if Class members did not elect distributions and remained invested in the Plan, they were likely to receive an amount substantially higher than the $515.18 per share distributed in September 2021." [144] at 52.

Plaintiff's Amended Complaint alleges that Defendants engaged in numerous breaches of their fiduciary duties, including (i) failing to conduct a prudent valuation

3

**Appx. 003**

of the stock in 2020, (ii) failing to ensure that participants received fair market value for the stock held in their accounts, such as by conducting an up-to-date valuation for the 2021 stock redemption, and (iii) failing to timely disclose facts material to beneficiaries' interests. [148] at 6 (citing [87] ¶¶ 100–114).

To remedy these alleged "breaches of fiduciary duties and prohibited transactions, Plaintiff seeks to bring this action individually, as a representative of the affected Class of participants and beneficiaries, and on behalf of the Plan under ERISA § 502, 29 U.S.C. §1132(a)(2) and (3)," and numerous other claims. [87] ¶ 10.[1] Plaintiff now asks the Court to certify the following proposed Class under either Rule 23(b)(1) or (b)(2): "All participants in the Plan who received a distribution in an amount determined based on the 2020 Valuation of Company stock." [148] at 8 (citing [87] ¶ 93).

Defendants oppose Plaintiff's motion for class certification. *See* [192].

## II. Legal Standard

To merit certification, a proposed class must first satisfy all four requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class

---

[1] Plaintiff is seeking class certification for all Counts alleged in the Amended Complaint ([87]) except for Count VI, Failure to Produce Plan Documents. *See* [148] at 6 n.3.

4

**Appx. 004**

("adequacy"). *See* Fed. R. Civ. P. 23(a). Additionally, the Seventh Circuit independently instructs that "a class must be sufficiently definite that its members are ascertainable." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012) (citing *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006)). The class must also satisfy one of Rule 23(b)'s conditions. *Lacy v. Cook County*, 897 F.3d 847, 864 (7th Cir. 2018). Here, Plaintiff moves for certification under Rules 23(b)(1) and 23(b)(2).[2] *See* [148].

Rule 23's requirements are "more than 'a mere pleading standard,' and the court must satisfy itself with a 'rigorous analysis' that the prerequisites of certification are met, even if that analysis has 'some overlap with the merits of the plaintiff's underlying claim.'" *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1005 (7th Cir. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)). A plaintiff bears "the burden of showing that a proposed class satisfies the Rule 23 requirements" but "need not make that showing to a degree of absolute certainty. It is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). A "decision whether to certify a class is one that depends on a careful assessment of the facts, of potential differences among class members, of management challenges, and of the overall importance of the common issues of law or fact to the ultimate outcome." *Riffey v. Rauner*, 910 F.3d 314, 318 (7th Cir. 2018).

---

[2] In his Motion, "Plaintiff requests the opportunity to move for class certification under Rule 23(b)(3) and Rule 23(c)(4) should the Court deny Rule 23(b)(1) or Rule 23(b)(2) certification." [148] at 8 n.5. Defendants object to this request. *See* [192] at 14 n.7. Because the Court grants Plaintiff's motion under Rule 23 (b)(1), the Court need not reach this issue.

**Appx. 005**

## III. Discussion & Analysis

### A. Certification Under Rule 23(a)

For a class action to proceed, a plaintiff must "first" show that the proposed class satisfies the "four requirements under Rule 23(a): numerosity, commonality, typicality, and adequacy of representation." *Urlaub v. CITGO Petroleum Corp.*, Case No. 21 C 4133, 2024 WL 2209538, \*3 (N.D. Ill May 16, 2024).

#### 1. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Though "there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002). *See also Anderson v. Weinert Enters. Inc.*, 986 F.3d 773, 777 (7th Cir. 2021) ("While 'impracticable' does not mean 'impossible,' a class representative must show 'that it is extremely difficult or inconvenient to join all the members of the class.'") (quoting 7A C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1762 (3d ed.)).

Plaintiff's proposed class consists of himself and 145 former Plan participants, easily satisfying the numerosity requirement of Rule 23(a)(1). Defendants do not raise any arguments with respect to numerosity and therefore forfeit any objection regarding Plaintiff's satisfaction of Rule 23(a)(1). *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("Moreover, perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where

6

those arguments raise constitutional issues).") (internal quotation omitted). The Court finds that the proposed class meets the numerosity requirement.

### 2. Commonality

Under Rule 23(a)(2), a Plaintiff must demonstrate "questions of law or fact common to the class." A common question is one "that is 'capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Howard v. Cook Cnty. Sheriff's Office*, 989 F.3d 587, 598 (7th Cir. 2021) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). In instances "where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.,* 764 F.3d 750, 756 (7th Cir. 2014) (citations omitted). *See also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2) . . . Common nuclei of fact are typically manifest where . . the defendants have engaged in standardized conduct towards members of the proposed class . . . .") (quotations omitted). "Rule 23(a)(2) does not demand that every member of the class have an identical claim." *Spano v. Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011). "It is enough that there be one or more common questions of law or fact; supplemental proceedings can then take place if, for example, the common question relates to liability of the defendant to a class and separate hearings are needed to resolve the payments due to each member." *Id.*

7

**Appx. 007**

Here, Plaintiff alleges "that the defendants engaged in a single course of conduct" and that "this conduct affected all class members in the same way." *Urlaub,* 2024 WL 2209538 at*3. As Plaintiff points out, "Defendants owed the same fiduciary duties to all 146 members of the proposed Class." [148] at 11. Whether Defendants breached those fiduciary duties by purchasing the shares of those 146 participants at the 2020 Valuation, $515.18 per share, in September 2021 will have a common answer with respect to all members of the proposed Class. *See Suchanek,* 764 F,3d at 756–58 (finding that the "district court abused its discretion in failing to recognize that" a proposed class "satisfied the commonality requirement of Rule 23(a)(2)" where the "same legal standards govern[ed] every class member's claim"). Thus, the "common nucleus of operative facts" presented here satisfies Rule 23(a)(2).

Defendants again do not raise any arguments with respect to commonality and therefore forfeit any objection regarding Plaintiff's satisfaction of Rule 23(a)(2). *See Crespo,* 824 F.3d at 674. Accordingly, the Court finds Plaintiff meets his burden with respect to commonality. *See also Neil v. Zell*, 275 F.R.D. 256, 261 (N.D. Ill. 2011) (finding Rule 23(a)(2) satisfied in an ERISA case where the "allegations against Defendants arise from the exact same common nucleus of operative facts, without factual variations between class members, and the legal claims are identical for all class members . . . and Plaintiffs' allegations all unquestionably stem from the same occurrence . . . .").[3]

---

[3] The Court addresses the effect of the class actions waivers signed by 33 members of the proposed Class below.

**Appx. 008**

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The "typicality requirement is 'closely related' to the issue of commonality," (*Smith v. Aon Corp.*, 238 F.R.D. 609, 615 (N.D. Ill. 2006) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1017–18 (7th Cir.1992))) and "is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 514 (7th Cir.2006) (quotation and citation omitted). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Smith,* 238 F.R.D. at 615 (quotation omitted). In an ERISA case, "typicality is measured by reference to defendants' actions toward the Plan as a whole, not with respect to individual defenses that might be raised with respect to how participants later may share in a recovery by the Plan." *George v. Kraft Foods Global Inc.,* 251 F.R.D. 338, 349 (N.D. Ill. 2008).

Plaintiff and the other potential Class members all have the same legal claims against the same Defendants arising from the same alleged conduct and course of events. The Seventh Circuit requires that, in class action under ERISA, "there must be a congruence between the investments held by the named plaintiff and those held by the members of the class he or she wishes to represent." *Spano*, 633 F.3d at 586. Plaintiff, along with the 145 members of the proposed Class, participated in the Plan and received a distribution in 2021 at the 2020 Valuation. *See* [148] at 14 (citing Ex.

9

**Appx. 009**

1 2020 Termiantion-2021 Distribution List at 2–5). Thus, Plaintiff's claim maintains the "same essential characteristics as the claims of the class at large," satisfying Rule 23(a)(3). *Oshana*, 472 F.3d at 514.[4]

### 4. Adequacy of Representation

Finally, Rule 23(a)(4) mandates that "the representative parties will fairly and adequately protect the interests of the class." The "factors in this analysis are whether the named plaintiffs have (1) claims that do not conflict with those of other class members; (2) sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) competent, qualified, and experienced counsel who are able to conduct the litigation vigorously." *Wachala v. Astellas US LLC*, No. 20 C 3882, 2022 WL 408108, *5 (N.D. Ill. Feb. 10, 2022) (citing *Dietrich v. C.H. Robinson Worldwide, Inc.*, No. 18 C 4871, 2020 WL 635972, *4 (N.D. Ill. Feb. 11, 2020)). The Seventh Circuit has "made clear . . . that 'the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses" does not prevent class certification.'" *Howard,* 989 F.3d at 610 (quoting *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013)).

The claims of Plaintiff's proposed Class here all arise from the same alleged conduct. All 146 proposed Class members, including Plaintiff, were Plan participants at all relevant times, elected distributions in September 2021 at the 2020 Valuation price of $515.18 per share, and seek relief from the same alleged breaches of fiduciary

---

[4] As with numerosity and commonality, Defendants raise no specific arguments regarding typicality, thus forfeiting any objection to Plaintiff's satisfaction of the Rule. *See Crespo,* 824 F.3d at 674.

**Appx. 010**

duty. Further, Plaintiff's declaration affirms his willingness and ability to serve as Class representative, along with his understanding of the responsibilities the role entails. *See* [148-18]. The Court concludes that Plaintiff and the proposed Class members share both "the same interest" and the "same injury" for purposes of certification, and that Plaintiff has demonstrated commitment to participating in the suit on behalf of the other Class members. *Orr v. Shicker*, 953 F.3d 490, 499 (7th Cir. 2020) (citation omitted). The Court further concludes, and Defendants do not dispute, that counsel for the proposed Class has demonstrated their adequacy. *See* Fed. R. Civ. P. 23(g); [148] at 20–22; [148-1]. Rule 23(a)(4) remains satisfied.

Defendants argue that Plaintiff fails "to demonstrate that he will fairly and adequately protect the interests of the class" because: (1) Plaintiff allegedly gave "false testimony in connection with the putative class action" in his deposition; and (2) Plaintiff remains motivated by animus against Defendants in this case, which they allege may harm the potential class members. [192] at 20, 23.

Defendants claim Plaintiff's deposition testimony is inconsistent with those allegations in his Amended Complaint claiming that he was harmed by an alleged pressure campaign by Defendants to sell his shares. *See* [192] at 23. Defendants argue that plaintiffs who demonstrate a willingness to make false statements during litigation should not be permitted to serve as class representative, and thus Plaintiff cannot meet the requirements of Rule 23(a)(4). *See id.* Defendants cite two cases for this proposition—*Kaplan v. Pomerantz*, 132 F.R.D. 504, 510 (N.D. Ill. 1990), and *In re Northfield Lab., Inc. Sec. Litig.*, 267 F.R.D. 536, 543 (N.D. Ill. 2010).

11

**Appx. 011**

Both cases involved plaintiffs who made false statements in their respective depositions. In those instances, alternative explanations or interpretations of the testimony were "untenable," *Kaplan*, 132 F.R.D. at 510, and it was "obvious from the transcript that" the plaintiff "testified falsely." *In re Northfield Lab,* 267 F.R.D. at 543. Because "credibility problems interfere with" a "plaintiff's satisfaction of the typicality requirement" and the "adequacy of representation requirements," *Kaplan,* 132 F.R.D. at 510, the courts in both cases removed certain plaintiffs as class representatives. *See id.*; *In re Northfield Lab.*, 267 F.R.D. at 544.

This case is different, however, and the Court does not share Defendants' view of Plaintiff's deposition testimony. The Amended Complaint alleges that "the Company repeatedly pressured Plaintiff and Class members to make elections, against the Class's best interests and to the benefit of the Company and its leadership," citing to specific documents distributed to members of the proposed class in 2021, where Company managers encouraged participants to make an election. [87] ¶ 92. Plaintiff alleges that because "of the Company's pressure campaign, Plaintiff and all 146 members of the Class elected distributions." *Id.*

At Plaintiff's deposition, Defendants' counsel asked Plaintiff about several messages, where Plaintiff wrote that he was "leaning toward taking the entire distribution as cash now," [148-4] 62:2–3, because he felt the alternative to taking a cash election, i.e., letting the funds convert to cash and rollover into a mutual fund he could not access until the following year, "would not be a good decision." *Id.* 74:4–5. When asked by defense counsel whether communications from the Company's

12

**Appx. 012**

managers caused him to make an election decision, Plaintiff testified that he "would not say" the Company's urging was the "only" reason he made a distribution election, but he "definitely noted" the managers' language. *Id.* 69:18–23. Plaintiff added that he believed if he "had been given all the information that was available," he "probably would have made a different decision," regarding the election. *Id.* 72:20–73:1.

The testimony and the allegations are not irreconcilable. *See* [87] ¶ 90 (". . . if Plaintiff and the Class were informed that value of Company stock was substantially higher than the 2020 Valuation, and/or of the impending Stock Sale, they could (and likely would) have chosen to defer their distributions and, therefore, would have received many times the $515.18 per share they received in the September 2021 distribution."). To the extent Defendants believe Plaintiff made any admissions in his deposition that affect the merits of his claim, those issues fall outside of today's review of certification. *See Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010) ("Under the current rule, certification is largely independent of the merits . . . and a certified class can go down in flames on the merits. The possibility that individual hearings will be required for some plaintiffs to establish damages does not preclude certification." (citing *Pella Corp. v. Saltzman,* 606 F.3d 391 (7th Cir.2010); *Arreola v. Godinez*, 546 F.3d 788 (7th Cir.2008)). *See also id.* at 685, 687 ("A "court may take a peek at the merits before certifying a class," but it must be "limited to those aspects of the merits that affect the decisions essential under Rule 23 . . . The chance, even the certainty, that a class will lose on the merits does not prevent its certification."). The Court declines to deny certification on this basis.

13

**Appx. 013**

Defendants also argue that Plaintiff remains motivated by personal animus towards Defendants. To be sure, "a proposed representative may be inadequate when motivated by personal animus," and a "'trial court may properly consider the plaintiff's vindictiveness toward the defendant in determining whether the plaintiff is an adequate representative.'" *Neil*, 275 F.R.D. at 262 (quoting *Smith v. Ayres*, 977 F.2d 946, 949 (5th Cir.1992)). But the record does not support the claimed disqualifying animus.

Defendants point to comments Plaintiff made in text messages where he claimed that the Company's "executives were 'reliving their Arthur Andersen days'" and "stated that he wanted to 'prove deliberate fraud' in this case rather than settle.'" [192] at 24 (quoting Ex. L, October 9, 2021 Text Messages; Ex. M, October 14, 2021 Text Messages; Ex. N, November 4,2021 Text Messages). Defendants also point to certain portions of Plaintiff's deposition where he stated that he believed there was a "general commonality of dishonesty between the Arthur Andresen fraud cases and the present case." *Id.* (quoting Daly Tr. 93:22–94:6).

Simply put, such comments do not make Plaintiff an inadequate representative for the proposed Class. Cases invalidating a plaintiff's ability to represent a class based upon animus require far more severe expressions of animosity than what Plaintiff's comments exhibit. *See Smith v. Ayres*, 977 F.2d 946, 949 (5th Cir.1992) (holding that a plaintiff was an inadequate representative where he had "an unmistakable personal and professional dispute with" the defendant and "his brief" was "peppered with vituperative epithets, pugilistic metaphors, and

14

**Appx. 014**

descriptions of" the defendant "as 'satanic' and 'evil'" and plaintiff "stated that he is committed to 'ruin ten years of" the defendant's life); *Parrish v. National Football League Players Assoc.*, No. C 07–00943 WHA, 2008 WL 1925208, at *1–2 (N.D. Cal. April 29, 2008) (finding a plaintiff an inadequate representative where, in his deposition, he compared a defendant to "Caesar, Napoleon, Idi Amin, Hitler, Stalin, Milosevic, Saddam" and wanted "to finish this fight no matter how dirty it gets or what it takes or where it goes."). Plaintiff's comments cannot compare to these expressions of disqualifying animus, and the Court finds Rule 23(a)(4) satisfied here.

### B. Certification Under Rule 23(b)(1)

The Court next analyzes whether the proposed class satisfies the requirements of Rule 23(b). "ERISA class actions are commonly certified under either or both subsections of 23(b)(1) because recovery for a breach of the fiduciary duty owed to an ERISA plan . . . will inure to the plan as a whole, and because defendant-fiduciaries are entitled to consistent rulings regarding operation of the plan. Essentially, in an ERISA action in which relief is being sought on behalf of the plan as a whole . . . a plaintiff's victory would necessarily settle the issue for all other prospective plaintiffs." *Neil*, 275 F.R.D. at 267. Plaintiff argues that certification is appropriate here under both Rule 23(b)(1) and Rule 23(b)(2). Defendants object to certification on either ground.

#### 1. Feasibility of Certification of Claims Like Plaintiff's

Before analyzing Plaintiff's motion for certification under Rule 23(b)(1), the Court first addresses Defendants' global arguments regarding the application of

15

**Appx. 015**

ERISA sections § 502(a)(2) and § 409 to this motion.[5]  Defendants contend that class certification is conclusively inappropriate in this case because Plaintiff is "not seeking to represent the Plan as a whole" as required by § 502(a)(2) and is not a suitable representative of the plan under the same section because of "potential conflict with the interests of other participants in the Plan."  [192] at 8 (quotations omitted). According to Defendants, because Plaintiff makes no showing that "he is a suitable representative of the more than 1,350 other individuals who remained as Plan participants—let alone the Plan as a whole"—the Court must deny Plaintiff's motion. *Id.* at 12.

Established Supreme Court and Seventh Circuit precedent, however, forecloses these arguments.  The relevant ERISA provisions at issue are 29 U.S.C. § 1132(a)(2) and § 1109(a). Section 1132(a)(2) "provides that a civil action may be brought 'by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title.'" *Smith v. Bd. of Dirs. of Triad Mfg.*, 13 F.4th 613, 618 (7th Cir. 2021) (quoting 29 U.S.C. § 1132(a)(2)). Section "1109(a) imposes liability for any fiduciary who breaches his duties to the plan and holds him 'personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary,'" and "also authorizes 'other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.'" *Id.* (quoting 29 U.S.C. § 1109(a)).  Thus, considered together, "§ 1109(a)

---

[5] The Court notes that ERISA sections § 502(a)(2) and § 409 are codified at 29 U.S.C. § 1132(a)(2) and § 1109 (a), respectively.  The Court refers to each using the appropriate citation in context.

16

**Appx. 016**

creates fiduciary liability, and § 1132(a)(2) allows for its enforcement" in ERISA actions. *Id.*

The Supreme Court analyzed both statutes in *LaRue v. DeWolff, Boberg & Assoc., Inc.*, 522 U.S. 258 (2008). In that case, "a plan participant alleged that a fiduciary's misconduct—failing to make certain changes to his 401(k) account—had 'depleted his interest in the [defined contribution plan] by approximately $150,000, and amounted to a breach of fiduciary duty under ERISA.'" *Id.* (quoting *LaRue*, 522 U.S. at 250) (alteration in original). The Court distinguished prior precedent interpreting "§§ 502(a)(2) and 409" as designed to "protect 'the financial integrity of the plan'" and thus remedies under those section "'protect the entire plan, rather than . . . the rights of an individual beneficiary.'" *LaRue*, 522 U.S. at 254 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142–44 (1985)). The Court held "that the 'entire plan' language" from those cases, "which appears nowhere in § 409 or § 502(a)(2)," reflects the previous domination of defined benefit plans in "the retirement plan scene." *Id.* at 255. But for "defined contribution plans, however," in contrast to defined benefits plans, "fiduciary misconduct need not threaten the solvency of the entire plan reduce benefits below the amount that participants would otherwise receive." *Id.* at 255–56. Thus, the Court found that its prior "references to the 'entire plan,'" which "accurately reflect the operation of § 409 in the defined benefit context, are beside the point in the defined contribution context," because regardless of "whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts," such breaches

17

**Appx. 017**

still create "the kind of harms that concerned the draftsmen of § 409." *Id.* at 255–56.

Subsequent Seventh Circuit follow suit regarding recovery under § 502(a)(2) and § 409 in the defined contribution context. *See Rogers v. Baxter Intern. Inc.*, 521 F.3d 702, 705 (7th Cir. 2008) (holding "that participants in defined contribution plans may use § 502(a)(2), and thus § 409(a), to obtain relief if losses to *an* account are attributable to a pension plan fiduciary's breach of a duty owed to the plan.") (emphasis added); *Smith*, 13 F.4th at 619 (holding that, under *LaRue,* although § 1132(a) "does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account.'") (quoting *LaRue*, 522 U.S. at 256).

Defendants cite two post-*LaRue* Seventh Circuit cases—*Spano* and *Abbott*—to support their theory that the proposed Class cannot be certified because Plaintiff does not seek to recover for a "plan-wide" harm. Defendants contend that, under *Spano*, the Seventh Circuit requires Plaintiffs bringing actions under § 502(a)(2) to seek recovery for harms that diminish plan assets as a whole. *See* [192] at 9. Thus, according to Defendants, because the alleged injury here only affected some Plan participants and thus did not have a "plan-wide effect," *Spano* bars certification. Defendants also argue that *Abbott* imposes a "rule" prohibiting class certification "where some participants would either have their 'Plan assets reduced as a result of the lawsuit' or 'reap a windfall.'" *Id*. at 10 (quoting *Abbott*, 725 F.3d at 814). The Court rejects Defendants' reading of these cases.

18

**Appx. 018**

First, Defendants' argument regarding *Spano* misinterprets the Seventh Circuit's holding in that case; in fact, the rule Defendants urge would run afoul of the Supreme Court's holding in *LaRue*. In *Spano v. Boeing Co.*, the Seventh "confronted for the first time the question whether an action for breach of fiduciary duty under Section 502(a)(2) . . . may be maintained as a class action when a defined-contribution retirement savings plan," and concluded "that the answer was 'maybe.'" *Abbott*, 725 F.3d at 805 (citing *Spano v. Boeing Co.*, 633 F.3d 574 (7th Cir. 2011)). *Spano* does not require that all Plan participants must be harmed by the allegedly unlawful conduct for a class action under § 502(a)(2) to proceed; instead the Seventh Circuit observed that "while *LaRue* leaves no doubt that plan beneficiaries are entitled to resort to section 502(a)(2) after a breach of fiduciary duty reduces the value of plan assets in their defined-contribution accounts," that did not definitively answer "under what circumstances employees resorting to section 502(a)(2) may properly proceed as a class under Federal Rule of Civil Procedure 23." *Spano*, 633 F.3d at 581.

The court went on to hold that "there is a greater potential for intra-class conflict in the defined contribution context," as opposed to the defined benefit context, because "a fund that turns out to be an imprudent investment over a particular time for one participant may be a fine investment for another." *Id.* at 591. Thus, "if both are included in the same class, a conflict will result and class treatment will become untenable." *Id.* at 591. Because the district court's broad certification impaired its ability to sufficiently analyze such intra-class conflicts, the Seventh Circuit reversed; but, in doing so, the court noted that "nothing we have said should be understood as

19

**Appx. 019**

ruling out the possibility of class treatment for one or more better-defined and more targeted classes." *Id.* at 588, 591.

The Seventh Circuit expanded on this comment in *Abbott*. There, the plaintiff appealed the district court's denial of his motion for certification, arguing "that the proposed class, in accordance with . . . *Spano*," and other cases, was "precisely defined and carefully tailored to ensure that no plaintiff who may have actually benefited" from the conduct at issue would "be swept into a class that seeks relief in which he has no interest (or may actively oppose)." *Abbott*, 725 F.3d at 809. The Seventh Circuit agreed, and in reversing the district court's order, admonished plaintiffs and courts to "take care to avoid certifying classes in which a significant portion of the class may have interests adverse to that of the class representative."

The court noted that the "appropriateness of class treatment in a Section 502(a)(2) case (as in other class actions) depends on the claims for which certification is sought," adding that "in *Spano* . . . we were concerned that intra-class conflict of the sort that defeats both the typicality and adequacy-of-representation requirements of Rule 23(a) was all but inevitable" due to the breadth of the class definitions at issue. *Id.* at 813. But "the specifics of the . . . claim" in *Abbott* rendered it "unlikely that the sorts of conflicts that concerned us in *Spano* will arise," including that there was "no risk that any . . . investor who benefited" from the alleged unlawful conduct "would have her Plan assets reduced as a result" of the lawsuit, that the alleged conduct was "by nature not" prone to cause "wide swings in value that would enable some investors to reap a windfall" while others were harmed. *Id.* at 814. Because

20

**Appx. 020**

the specific nature of the alleged harm and the definition of the proposed class eliminated the risk of intra-class conflict Rule 23(a) prohibits, the Seventh Circuit held that the district court abused its discretion in denying certification. *Id.*

Thus, a careful reading of both *Spano* and *Abbott* reveals that neither case requires that all participants of a Plan must suffer harm for a plaintiff to bring a class action under § 502(a) (again, a result which would be in tension with *LaRue*). Instead, these cases provide general guidance to district courts analyzing the appropriateness of class treatment in § 502(a)(2) claims. The Seventh Circuit "has never held . . . that the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses forecloses class certification entirely." *Id.* at 813.

Thus, Defendants' contention that Plaintiff's claim must represent *all* Plan participants remains inapposite and incorrect as a matter of law. That argument finds no basis in *LaRue,* and it misinterprets the holdings of both *Spano* and *Abbott*. *See also In re Schering Plough Corp. ERISA Litig.,* 589 F.3d 585, 595 n.9 (3d Cir. 2009) (*LaRue* "broadens, rather than limits, the relief available under § 502(a)(2) in holding that a derivative fiduciary claim may be brought on behalf of a 'plan,' even if the ultimate relief may be individualized."); *Parker v. Tenneco Inc.*, 114 F.4th 786, 796 (6th Cir. 2024) ("*LaRue* allows an individual plaintiff to bring a § 502(a)(2) representative suit for losses to her individual plan account, even though the injury is to the plan.").

Furthermore, Defendants' reading ignores prior cases in this District certifying qualifying ERISA claims under Rule 23 where only some of the Plan participants are

21

**Appx. 021**

included in the class. *See, e.g., Rogers v. Baxter Intern. Inc.*, No. 04 C 6476, 2006 WL 794734, \*2 (N.D. Ill. Mar. 22, 2006) (certifying a class action suit where the proposed class included a subset of the Plan at issue); *Urlaub*, 2024 WL 2209538 at\*3 (same). *See also Neil*, 275 F.R.D. at 256, 266 (The question "is not whether some might have benefitted from parts of the occurrence now being challenged, but whether, going forward, some members of the Plaintiff class would be harmed by the relief being sought . . . . There are no members of the proposed class who would, for any reason, prefer that Defendants not pay damages."); *Wachala* 2022 WL 408108 at \*7 ("As the Seventh Circuit later explained in *Abbott*, . . . the class definitions in *Spano* were 'extraordinarily broad'—so broad that it appeared that some class members would be harmed by the relief sought—and vague as to what investment options plaintiffs challenged. The same cannot be said of the . . . Class definition; like the definition that passed muster in *Abbott*, it is "considerably narrower" than the definitions in *Spano* and limited to Plan participants who suffered a loss . . . And, as in *Abbott*, there seems to be no risk that any participant who had gains from the alleged breaches would have his Plan assets reduced as a result of this lawsuit.").

Here, Plaintiff (along with the proposed Class members) alleges a reduction in value of his defined contribution accounts resulting from Defendants' alleged breach of their fiduciary duties. Plaintiff has "taken care to limit the class to those Plan participants who invested" in the Plan and received a distribution in September 2021. *Abbott,* 725 F.3d at 814. As the Court explained in its analysis of Rule 23(a)(2), Plaintiff, along with the 145 other members of the proposed Class, participated in the

22

**Appx. 022**

same Plan and received a distribution at the same time for the same compensation ($515.18 per share per the 2020 Valuation). If Defendants breached their fiduciary duties by purchasing the shares of the proposed Class at the 2020 Valuation, all Class members will have been harmed by that breach. In other words, this case presents no risk that any "intra-class conflict of the sort that defeats both the typicality and adequacy-of-representation requirements of Rule 23(a)" and the proposed Class definition "excludes from the class any persons who did not experience injury,"—the primary concerns animating the decisions in both *Spano* and *Abbott*. *Id.* Thus, the Court finds that class treatment is appropriate for the claims for which certification is sought in this case.

The Court next addresses Defendants' arguments claiming that *Abbott* presents a separate bar to certification here. Defendants contend that the Court must deny Plaintiff's motion under *Abbott* because some Plan participants will have their "Plan assets reduced "or "reap a windfall" because of this lawsuit. [192] at 10 (quoting *Abbott,* 725 F.3d at 814). But Defendants' argument that *Abbott* created a wholesale bar against certification if there is "any risk" that a plan participant who benefited Defendants' conduct "would have her Plan assets reduced" misunderstands *Abbott*'s key holding. *See* [192] at 10 (quoting *Abbott,* 725 F.3d at 814). *Abbott* primarily pertains to concerns regarding intra-class conflict.

Further, "Plaintiff seeks relief from Defendants," and thus would not affect any funds held by Plan participants not in the proposed Class. [194] at 6. The notion that, at some later point in the litigation, the Court could "order recission of the

23

**Appx. 023**

distribution of Plan assets, or that claims be paid from [the] $50 million that currently remains in the Plan" remains completely speculative at this stage. Although "all class definitions allude to the merits, in that they assume either implicitly or explicitly that the defendant's conduct has adversely affected the defined group of people . . . the class definition is a tool of case management" and it "settles the question who the adversaries are, and so it enables the defendant to gauge the extent of its exposure to liability and it alerts excluded parties to consider whether they need to undertake separate actions in order to protect their rights . . . What it does not tell us is who will win the case" nor does it resolve any issues that go to the merits. *Abbott*, 725 F.3d at 810 (citations omitted). Thus, Defendants' arguments concerning the source of any damages payments presents no wholesale bar to certification at this stage. *See Abbott*, 725 F.3d at 813–14 (holding that *Spano* did not prevent certification of plaintiffs' class in that case and if the district court's comments regarding the unlikelihood of substantial intra-class conflicts "turn out to be wrong, the district court can make further adjustments to the class definition later").

Having determined that certification remains feasible for claims like Plaintiff's, the Court considers whether the proposed class satisfies the requirements of Rule 23(b)(1) below.[6]

---

[6] The Court notes that Defendants raise several arguments concerning "procedural safeguards" and "due process rights," all of which pertain to Defendants' claim that Plaintiff maintains conflicts with other Plan participants not in the proposed Class. *See* [192] at 11–13. Because the Court finds, for the reasons explained extensively above, class treatment is appropriate for this case and that any potential for intra-class conflict remains entirely speculative at this stage, the Court does not address these arguments separately.

24

**Appx. 024**

### 2. Rule 23(b)'s Requirements

Class actions under ERISA "are commonly certified under either or both subsections of 23(b)(1) because recovery for a breach of the fiduciary duty owed to an ERISA plan, as is the predominant claim here, will inure to the plan as a whole, and because defendant-fiduciaries are entitled to consistent rulings regarding operation of the plan." *Neil*, 275 F.R.D. at 267 (collecting cases). A class action may be maintained under Rule 23(b)(1)(A) if "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."

As with many ERISA cases, here, "because plaintiffs bring their claims on behalf of the Plan, adjudications of the representative plaintiffs' suit would, as a practical matter, be dispositive of the interests of the other participants claims on behalf of the Plan." *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 357 (N.D. Ill. 2007). Additionally, "adjudication of the claims involves the recovery and distribution of Plan assets on behalf of the Plan rather than determination of personal causes of action brought by individuals. As a result, separate actions by individual plaintiffs would impair the ability of other participants to protect their interests if the suit proceeded outside of a class context," thus rendering certification proper under Rule 23(b)(1)(A). *Id.*

Defendants claim that because Plaintiff does not seek "to represent the Plan as a whole," this case is distinguishable from the other numerous cases which certify

25

**Appx. 025**

similar ERISA actions. But as the Court already explained, Supreme Court and Seventh Circuit case law permit plaintiffs to bring actions on behalf of subsets of participants in a Plan for a Plan injury. Therefore, because Plaintiff and the proposed Class bring the same claim against Defendants alleging they breached their fiduciary duties in the same course of conduct and "prosecution of separate actions by various Plaintiffs would create a risk of 'inconsistent or varying adjudications with respect to individual members of the class,'" the Court finds certification under Rule 23(b)(1)(A) appropriate. *Smith,* 238 F.R.D. at 615 (quoting Fed. R. Civ. Pro. 23(b)(1)(A)). *See also Urlaub,* 2024 WL 2209538 at*3 ("The defendants are entitled to consistent rulings regarding operation of the plan . . . and have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike.") (quotations omitted).

A class action may also be certified under Rule 23(b)(1)(B) if "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."

Plaintiffs argue that certification under 23(b)(1)(B) is also appropriate here "because the claims at issue here—breach of fiduciary duty and engaging in a prohibited transaction—must be brought in a representative capacity on behalf of the entire plan." *Neil*, 275 F.R.D. at 269. As Plaintiff notes in his Reply brief, "claims for breach of fiduciary duty, like the ones Plaintiff brings here, 'can only be brought on

**Appx. 026**

behalf of plan participants.'" [194] at 10 (quoting *Rogers v. Baxter Int'l Inc.*, No. 04 C 6476, 2006 WL 794734, *11 (N.D. Ill. Mar. 22, 2006)). The Court agrees that Rule 23(b)(1)(B) certification is also proper here because "for reasons previously explained, the Court concludes that Plaintiffs' claims are typical of those of other class members and indeed are paradigmatic ERISA claims suitable for certification pursuant to 23(b)(1)(B) because a victory on these claims by one plan member would necessarily be a victory for all plan members." *Neil*, 275 F.R.D. at 268.

In other words, should Plaintiff succeed in showing that Defendants breached their fiduciary duties in cashing out Plan participant shares at the 2020 Valuation in September 2021, that determination "would be dispositive of the interests of the other members not parties to the individual adjudications," and thus Rule 23(b)(1)(B) remains satisfied. *See also Neil,* 275 F.R.D. at 268 ("Defendant does not cite any case in which a court has declined to certify an ERISA class pursuant to 23(b)(1).").[7]

### C.    Effect of Class Action Waivers

The parties both admit that 33 of the 146 participants in the proposed class executed agreements with the Company where they waived "any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which the Company . . . is a party." [192] Ex. O ¶ 4(d). Plaintiff contends that this waiver is unenforceable, citing *Smith v. Board of Directors of Triad Manufacturing.*

---

[7] Because the Court concludes that certification is most appropriate under Rule 23(b)(1), the Court need not reach the parties alternative arguments regarding whether the requirements of Rule 23(b)(2) are also satisfied in this case.

For the reasons the Court explains below, *Smith* is distinguishable from the facts presented and thus does not invalidate the class action waivers at issue.

In *Smith*, the Seventh Circuit addressed "an arbitration provision with a class action waiver" included within the retirement plan at issue. 13 F.4th 613, 616 (7th Cir. 2021). The provision directed that "with respect to any claim brought under ERISA § 502(a)(2) to seek appropriate relief under § 409," "all Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis, and each arbitration shall be limited solely to one Claimant's Covered Claims, and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any Eligible Employee, Participant or Beneficiary other than the Claimant." *Id.* (quotations omitted). The Seventh Circuit held that the provision was unenforceable under the "effective vindication" exception to the general enforceability of arbitration agreements. *Id.* at 621.

The "effective vindication" exception "finds its origin in the desire to prevent 'prospective waiver of a party's *right to pursue* statutory remedies,'" and applies to "a provision in an arbitration agreement forbidding the assertion of certain statutory rights." *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 236-37 (2013) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)) (emphasis in original). Thus, in *Smith,* although the Seventh Circuit acknowledged that "ERISA claims are generally arbitrable," the "plan's arbitration provision, which also contains a class action waiver, precludes a

28

**Appx. 028**

participant from seeking or receiving relief "that . . . would go beyond just" the named plaintiff "and extend to the entire plan." *Id.* at 621. Because "removal of a fiduciary— a remedy expressly contemplated by § 1109(a)," fell "exactly within the ambit of relief forbidden by the plan" and could not "be reconciled" with the "plain text of § 1109(a)," the arbitration provision acted "as a 'prospective waiver of a party's right to pursue statutory remedies,'" and therefore could not be enforced. *Id.* at 622 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)).

Plaintiff argues that *Smith* controls the outcome of this issue, because he seeks the same relief as the plaintiff in that case. [194] at 14 (quoting [88] ¶ vi) (Removal of "the fiduciaries who have breached their fiduciary duties" and enjoining "them from future unlawful conduct' and other Plan-wide relief."). Thus, according to Plaintiff, the waivers here remain unenforceable for the same reason the Seventh Circuit invalidated the waivers in *Smith*: they prohibit proposed Class members from obtaining statutory, Plan-wide relief.

As in *Smith*, Plaintiff also "invokes § 1132(a)(2)'s cause of action to seek relief for (alleged) fiduciary breaches under § 1109(a)," including equitable relief. 13 F.4th at 621. Further, just as in *Smith*, the Prayer for Relief in the Amended Complaint requests that the Court "remove the fiduciaries" who allegedly breached their fiduciary duties. [87] ¶ vi. Plaintiff also asks the Cour to "order restitution and disgorgement in favor of the Plan and the Class," "impose a constructive trust for the benefit of the Plan and the Class," and "reform the Plan as appropriate to make the

29

**Appx. 029**

Class whole." *Id.* ¶¶ vi–x. But the Seventh Circuit in *Smith* took care to note that "the problem with the plan's arbitration provision is not that the plan funnels its participants away from class actions . . ." but instead "is its prohibition on certain plan-wide remedies, not plan-wide representation." *Smith*, 13 F.4th at 622.

That is not the case here. The class action waiver at issue in this matter does not mention remedies, is not part of any arbitration agreement, and, in fact, does not arise from the Plan at all but instead is contained within an employment termination agreement signed by the 33 proposed Class members. *See* Ex. O, [192-16]. Thus, the issues presented in *Smith* do not arise here, and as such, that case is not controlling, because the waiver itself does not contain any language restricting statutory remedies. *See id.* (". . . Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which the Company . . . is a party.").

That said, although "the class action waiver in this case is not encased in an arbitration provision," the *Smith* decision and other circuit court decisions on these issues remain "persuasive and relevant to the Court's analysis in this case." *Arnold v. Paredes*, 714 F.Supp.3d 962, 976 (M.D. Tenn. 2024). The Supreme Court "does not hold that a class action waiver alone violates the effective vindication doctrine." *Id.* at 977. In fact, the Court has "declined to apply that doctrine to invalidate a class action waiver." *Id.* (citing *Italian Colors*, 570 U.S. at 236-37) ("The class-action waiver merely limits arbitration to the two contracting parties. It no more eliminates

30

**Appx. 030**

those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938 . . . Or, to put it differently, the individual suit that was considered adequate to assure effective vindication of a federal right before adoption of class-action procedures did not suddenly become ineffective vindication upon their adoption.") (internal quotation marks and citations omitted).

Other circuits that have addressed the issue of class-action waivers in ERISA litigation have done so in the context of arbitration agreement enforcement. For example, in *Harrison v. Envision Management Holding, Inc. Board of Directors*, the Tenth Circuit invalidated an arbitration and class action waiver provision of a retirement plan that prevented individuals from seeking plan-wide relief. 59 F.4th 1090 (10th Cir. 2023) *cert. denied*, 144 S.Ct. 280, 217 L.Ed.2d 128. Again, the arbitration provision at issue limited the types of remedies a plaintiff may seek to individual remedies, which the Tenth Circuit observed left unclear "what remedies" the plaintiff "would be left with if . . . enforced as written." *Id.* at 1107. Relying on *Smith*, the court concluded that while the provisions "prohibition on class actions" was not "problematic," the "prohibition of any form of relief that would benefit anyone other than Harrison that directly conflicts with the statutory remedies available under 29 U.S.C. §§ 1109 and 1132(a)(2), (a)(3)," rendering the arbitration agreement unenforceable.[8] *Id.* at 1108–09 (citations omitted).

---

[8] The entire arbitration agreement became unenforceable due to a non-severability clause contained in the Plan Document. *See Harrison*, 59 F.4th at 1112.

**Appx. 031**

The Third Circuit also confronted this issue in *Henry v. Wilmington Trust, N.A.*, invalidating a class action waiver contained within an arbitration agreement that prohibited "ESOP participants from bringing a lawsuit that seek[s] or receive[s] any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any third party." 72 F.4th 499, 507 (3rd Cir. 2023). Again relying on *Smith*, the court found that because "the class action waiver purports to prohibit statutorily authorized remedies," namely, seeking plan-wide relief, "the class action waiver and the statute cannot be reconciled," thus rendering the provision unenforceable. The court also noted that even though the plaintiff's complaint did not seek "removal of a fiduciary," the other forms of relief sought "such as restitution" were "both expressly authorized by statute and necessarily plan-wide," and therefore because the waiver required "ESOP participants to waiver their statutory right to pursue" those plan-wide "statutorily authorized remedies," the effective vindication doctrine applied. *Id.* at 508.

In sum, Seventh Circuit precedent (and case law in other circuits) hold that class action waivers that conflict with a plaintiff's ability to pursue a statutory remedy under ERISA remain barred by the effective vindication doctrine. *See Smith*, 13 F.4th at 620; *Harrison*, 59 F.4th at 1111; *Henry*, 72 F.4th at 508; *Italian Colors*, 570 U.S. at 236–37. *See also Arnold*, 714 F. Supp. 3d at 977–78 (holding the same). Because the class action waivers at issue here pose no restriction on what remedies an individual may seek, *see* Ex. O [192-16], the effective vindication exception to the general enforcement of such waivers does not apply. See *Arnold*, 714 F.Supp.3d at

32

**Appx. 032**

976 (noting that the Supreme Court has "declined to apply that doctrine to invalidate a class action waiver" without more) (citing *Italian Colors*, 570 U.S. at 236–37).[9]

Because the Court finds that the class action waivers signed by 33 members of the proposed Class remain valid, those individuals may not be included in the Class the Court now certifies under Rule 23(b)(1).

## IV.    Conclusion

For the reasons explained above, the Court grants Plaintiff's motion for class certification [188] and certifies the following class, excluding the 33 proposed Class members who signed the class action waivers discussed above: "All participants in the Plan who received a distribution in an amount determined based on the 2020 Valuation of Company stock who did not sign a class action waiver as part of any employment termination agreement with Company."

Date: March 27, 2026                                    Entered:

John Robert Blakey
United States District Judge

---

[9] Further, there remains no practical limitation on the remedies the 33 proposed Class members may seek. As the Court explained exhaustively above, under *LaRue*, these individuals may seek remedies for their individualized harms resulting from the alleged injury to the Plan. *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595 n.9 (3d Cir. 2009) (*LaRue* "broadens, rather than limits, the relief available under § 502(a)(2) in holding that a derivative fiduciary claim may be brought on behalf of a 'plan,' even if the ultimate relief may be individualized."); *Parker v. Tenneco Inc.*, 114 F.4th 786, 796 (6th Cir. 2024) ("LaRue allows an individual plaintiff to bring a § 502(a)(2) representative suit for losses to her individual plan account, even though the injury is to the plan."). Accordingly, nothing prevents these potential plaintiffs from vindicating any potential statutory rights they may be entitled to under § 502(a) or § 409.

**Appx. 033**